## Crawford *v.* Redevelopment Authority, Appellant.

550

Argued October 9, 1964. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen and O'Brien, JJ.; decree affirmed November 24, 1964, by an equally divided court; reargument granted January 15, 1965; reargued March 19, 1965. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

reargument refused August 6, 1965.

*Herbert Margolis*, with him *Fred C. Adams* and *Milton D. Margolis*, for appellants.

*David E. Cohen*, with him *Hugh J. Lane*, for appellee.

Opinion by Mr. Justice O'Brien, June 30, 1965:

The plaintiff-appellee, Edith L. Crawford, brought the within action in equity to enjoin the Redevelopment Authority of Fayette County from taking her property pursuant to a Redevelopment Plan. After a hearing in the court below, the chancellor found the following facts: "1. By resolution regularly adopted, the Planning Commission of the City of Uniontown certified the Old West School House Area, otherwise known as the Pennsylvania R-92 project, to be in need of redevelopment. Thereafter, the same body approved a redevelopment proposal for the area as prepared by the Redevelopment Authority of the County of Fayette. After public hearings on the redevelopment proposal, similar resolutions were duly adopted by the Council of the City of Uniontown and by the Fayette County Commissioners. 2. The Old West School House area or the R-92 project as it is presently constituted, comprises two city blocks of approximate equal areas, both of which are bounded on the east by Market Street and on the west by Mill Street. These two blocks are separated from each other by West Fayette Street, a 60-foot wide concrete highway which is one of Uniontown's main traffic arteries. The block to the north of Fayette Street is bound on its northern border by West South Street, and the block to the south of Fayette Street is bounded on its southern border by Ray Street. 3. On September 3, 1957, the City of Uniontown adopted a zoning ordinance in which the area in issue was zoned as 'General Business'. In this category the inclusion of schools, public or parochial, was specifically prohibited. 4. Subsequent to the adoption of the official city plan for the redevelopment of the City of Uniontown, in which the preceding zoning ordinance was incorporated as a part, a redevelopment proposal was submitted by the Fayette County Planning and Zoning Commission in which the permitted uses, as

they applied to the R-92 project, were restricted to: churches, temples, rectories, parochial schools, convents, historic buildings, playground areas, with accessory buildings and parking. 5. The block which lies south of Fayette Street is divided into two parts by an unnamed alley which extends east and west between Market and Mill Streets. The part which lies to the north of this alley comprises approximately one-third of the total area of the block, while that portion south of the unnamed alley comprises the remaining two-thirds. The area of the entire project, excluding streets, is 89,307 square feet, and the area south of the unnamed alley is 29,025 square feet, or 32.6 per cent of the whole R-92 redevelopment project. 6. The property of the plaintiff, and four others, lies in the area south of the unnamed alley, and constitutes the southernmost section of the R-92 redevelopment project. Her property fronts along Mill Street and has erected thereon a frame dwelling containing four apartments. Adjacent thereto is a substantial lawn and well-kept flower garden. This property occupies 14,885 square feet, or slightly more than fifty per cent of the area which lies south of the unnamed alley. 7. As heretofore stated, Ray Street constitutes the southernmost boundary of the R-92 project, across which street, in a southern direction, lies another contiguous block upon which is erected Saint Therese's Roman Catholic Church. 8. The resolution of the Planning Commission of the City of Uniontown certifying the R-92 project to be an area in need of redevelopment recites that 'A study of the area reveals that such area contains aged and deteriorating structures which prohibit the sound growth of the community.' These conditions are conceded to exist in the area of the project north of the unnamed alley and in the entire block north of Fayette Street. They do not so exist in the area south of the unnamed alley." The chancellor then concluded that

the area of the plaintiff's property was not blighted and entered a decree which forbade the taking of the plaintiff's property. This appeal followed.

This appeal raises many issues which we must consider. The first is the propriety of an attack in equity of a Redevelopment Authority Certification that an area is blighted. We have long held that such an attack is proper when it is alleged and proven that the Authority, in making its certification, acted in bad faith, arbitrarily, or failed to follow a statutory requirement. *Oliver v. Clairton*, 374 Pa. 333, 98 A. 2d 47 (1953). In addition thereto, equity has the inherent power to examine the constitutionality of the actions of an authority. *Eways v. Reading Parking Authority*, 385 Pa. 592, 124 A. 2d 92 (1956) ; *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 54 A. 2d 277 (1947). However, we must make clear the point that the courts have no right to substitute their discretion in place of the legislatively granted discretion of the Authority. We said, in *Oliver v. Clairton*, supra, p. 340 : ". . . we said in Schenck v. Pittsburgh, 364 Pa. 31, pp. 35, 36, 70 A. 2d 612, 614, that 'in the absence of any indication that the Commission did not act in good faith or was wholly arbitrary in certifying the area designated by it as blighted, its certification to that effect is not subject to judicial review,' and that, since the Urban Redevelopment Law 'gives the power of eminent domain to the Urban Redevelopment Authority, it is for that agency, and not for the courts, to determine whether or not the power should be exercised in this particular instance. It has been held in many cases that where the right of eminent domain is vested in a municipality, an administrative body, or even a private corporation, the question as to whether the circumstances justify the exercise of the power in a given instance is not a judicial one, at least in the absence of fraud or palpable bad faith.'" *Schwartz v. Urban Redev. A. of Pgh.*, 416 Pa. 503, 206 A. 2d 789 (1965).

The power of discretion over what areas are to be considered blighted is solely within the power of the Authority. The only function of the courts in this matter is to see that the Authority has acted not in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the Authority do not violate any of our constitutional safeguards. Within this framework then, we must examine the plaintiff-appellee's assertions and evidence, and the action of the court below. *Oliver, supra; Schenck v. Pittsburgh,* 364 Pa. 31, 70 A. 2d 612 (1950).

It is well settled that, as we have said on numerous occasions, the findings of fact of the chancellor have the effect of a jury verdict when affirmed by a court en banc and will not be disturbed on appeal unless they were premised on erroneous inferences and deductions or an error of law. *Schwartz v. Urban Redev. A. of Pgh.,* supra; *Felt v. Hope,* 416 Pa. 118, 206 A. 2d 621 (1964).

The first issue, raised by the plaintiff, is that the Authority acted arbitrarily in including the property south of the unnamed alley in the Redevelopment Plan. In support of this contention, the plaintiff produced several real estate experts who testified that in their opinion the area south of the unnamed alley did not meet the standards for being blighted as called for in the Urban Redevelopment Law, Act of May 24, 1945, P. L. 991, §2(a), 35 P.S. §1702(a) which provides: "(a) That there exist in urban communities in this Commonwealth areas which have become blighted because of the unsafe, unsanitary, inadequate or overcrowded condition of the dwellings therein, or because of inadequate planning of the area, or excessive land coverage by the buildings thereon, or the lack of proper light and air and open space, or because of the defec-

tive design and arrangement of the buildings thereon, or faulty street or lot layout, or economically or socially undesirable land uses."

These experts conceded that the area north of the unnamed alley was blighted, but that the Crawford property, which constituted a large part of the property south of the unnamed alley, was not blighted. The plaintiff then produced pictures showing the garden of the Crawford property, which is an island amidst obviously blighted, run-down and deteriorated property. However, the entire city of Uniontown was the subject of a comprehensive study by a professional planning organization. Their conclusions were submitted to the Urban Redevelopment Board, the City Planning Commission, and the City Council, which determined that the whole area had taken on the character of blight. The legislature has decreed that blighted areas be restored to healthy and prosperous urban areas. If urban areas had been kept in the same condition as the Crawford property, there would be no need for an Urban Redevelopment Law. We cannot construe the actions of the Urban Renewal Board as arbitrary merely because one small part of the entire blighted area is free from blight. Comprehensive planning requires that areas be considered in their entirety and not in their unseverable parts. In *St. Peter's v. Urban Red. Auth. of Pgh.*, 394 Pa. 194, 146 A. 2d 724 (1958), p. 197, we said: ". . . the purpose of the authority is to deal with an area rather than with individual properties: Oliver v. Clairton, 374 Pa. 333 (1953). And it is generally settled that unless bad faith, arbitrary action, or failure to follow a statutory requirement are shown, the certification by an Authority that an area is blighted and the plan for improving it are not subject to judicial review: Schenck v. Pittsburgh, 364 Pa. 31 (1950); Oliver v. Clairton, supra, 374 Pa. 333 (1953); Lazrow v. Philadelphia Housing Authority, 375 Pa. 586 (1954);

Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566 (1954). Plaintiff's criticisms of the Authority's action fall within this rule." We said in *Schenck,* supra, p. 37: "In Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329, 338, 54 A. 2d 277, 281, it was said that 'The Urban Redevelopment Law closely parallels the provisions of the Housing Authorities Law of May 28, 1937, P. L. 955, . . . The fundamental purpose of both these acts was the same, namely, the clearance of slum areas, although the Housing Authorities Law aimed more particularly at the elimination of undesirable dwelling houses *whereas the Urban Redevelopment Law is not so restricted.*' If the Urban Redevelopment Law were to be held to apply only to the clearing of blighted *residential* areas and the reconstruction of dwelling houses thereon there would have been no reason for its enactment since it would have added nothing to the Housing Authorities Law already in force. On the contrary, the Urban Redevelopment Law was obviously intended to give wide scope to municipalities in redesigning and rebuilding such areas within their limits as, by reason of the passage of years and the enormous changes in traffic conditions and types of building construction, no longer meet the economic and social needs of modern city life and progress. Such needs exist, even if from a different angle, as well in the case of industrial and commercial as of residential areas. It is to be noted that the Urban Redevelopment Law defines the term 'redevelopment', as used in the act, as 'The acquisition, replanning, clearance, rehabilitation or rebuilding of an area for residential, recreational, *commercial, industrial* or other purposes, including the provision of streets, parks, recreational areas and other open spaces.' " (Emphasis in original).

The second issue raised by the plaintiff-appellee is that the area in question was a part of project No. 13

of the Comprehensive Plan. However, the defendants-appellants elected to begin this project before projects 7 through 12 were undertaken. There is no statutory requirement that projects be started in any particular sequence. The choice of priority of any project over any other appears to be well within the discretion and power of the Urban Redevelopment Board.

The next issue raised by the plaintiff-appellee is that the Plan is unconstitutional, in that it permits, among other things, parochial schools but excludes public schools. Even if appellee were correct in this assertion, the zoning ordinance of Uniontown has been amended, curing this alleged defect; hence the issue is moot and need not now be determined. In addition thereto, this issue does not go to the propriety of the certification of blight but deals with questions not the proper subject matter for this appeal.

The final question raised by the plaintiff-appellee is whether, if part of the project is unconstitutional, the court of equity may sever the unconstitutional portion of the proposal, leaving the rest intact. We need not concern ourselves with this question because we have not found any part of the plan to be unconstitutional. There was nothing unconstitutional in the procedures employed, and the Urban Redevelopment Act has been held constitutional. *Belovsky v. Redevelopment Authority,* supra.

As we have said above, the courts may not substitute their discretion for that of the Board on the question of blight unless the actions of the Board are arbitrary, made in bad faith, or not in conformance with the procedures ordained by statute. The plaintiff has not demonstrated circumstances which would permit the courts to interfere with the discretion of the Board.

The decree of the court below is reversed. Each party to bear own costs.

Mr. Justice ROBERTS concurs in the result.

Mr. Chief Justice BELL and Mr. Justice JONES dissent.