DeJoseph et al., Appellants, v. Osser.

Argued January 22, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Edward R. Becker,* with him *Robert Baer Cohen, Herbert W. Salus, Jr.* and *William A. Meehan,* for appellants.

*Levy Anderson,* First Deputy City Solicitor, with him *Frank J. Pfizenmayer,* Assistant City Solicitor, *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for appellees.

*David Berger,* for intervenor, appellee.

OPINION BY MR. JUSTICE EAGEN, May 9, 1969:

In the City of Philadelphia, the City Commissioners act as the County Board of Elections. In an effort to encourage voter registration and increased citizen participation in elections, the Commissioners, in addition to the fixed sites provided for voter registration in every ward throughout the City, also provide what is known as a field and bus registration program. Under this plan, traveling registrars go to various predetermined places throughout the City on various dates to accept voter registrations. Such a program has been in effect for several years. For the 1968 election, this program commenced on July 15, 1968, and ended on September 18, 1968.

On August 27, 1968, the instant action in equity was instituted seeking to enjoin the Commissioners from continuing the field and bus registration program adopted and then in progress for the July-September period in 1968. After a final decree was entered in the court below dismissing the complaint, this appeal was filed. We affirm.

The gravamen of the plaintiffs' complaint was that the challenged field and bus registration schedule listed the preponderance of registration dates in places and areas tending to favor registration in the Democratic party; that it was therefore discriminatory and constituted a politically motivated attempt on the part of the Commissioners to influence a larger number of registrations in the Democratic party, and thereby unfairly influenced the results of the 1968 election. As the court below correctly stated, the only function of the courts in evaluating such a complaint is to ascertain if the governmental agency entrusted with the responsibility involved acted arbitrarily or in bad faith, or failed to follow required statutory procedures, or violated any constitutional safeguards. See *Crawford v. Redevelopment Authority*, 418 Pa. 549, 211 A. 2d

866 (1965). After considering all of the pertinent facts disclosed by the evidence presented at the hearing before the chancellor, the court concluded that no arbitrary conduct or bad faith on the part of the Commissioners had been established. For the purposes of this decision, we deem it necessary to determine neither the correctness of this conclusion, nor the question of mootness.

A close study of the record discloses that the plaintiffs' basic criticism of the challenged registration program was that it did not include a sufficient number of field and bus registration dates in areas which might favor registrations in the Republican party. It was not contended, nor was any evidence offered to establish, that the registrations in the places scheduled were unreasonable or unwarranted. What the plaintiffs really sought to attain were additional registration dates in some areas. Assuming that this quest was justified, still we conclude that the lower court did not abuse its discretion or commit an error of law in dismissing the instant action.

As noted before, the challenged program had been in progress for several weeks before this action was instituted. Furthermore, only a period of approximately three weeks remained before the program would necessarily cease. Moreover, the plaintiff, Devlin, who is Chairman of the City Committee of the Republican party in Philadelphia, admittedly received the list of the scheduled field and bus registration sites at least three weeks before July 15, 1968. Despite this knowledge, he attempted no communication with the Commissioners, offered no request for additional registration dates,[1] and entered no objection to the adopted

---

[1] In one area where representatives of the Republican party, other than the plaintiffs, requested additional registration dates, the Commissioners accepted the suggestion.

schedule until the present action was instituted. Under such circumstances, the court did not err in refusing equitable relief.

We do not indicate by the foregoing that public officials must first be requested to perform their responsibilities properly before a citizen may challenge their actions in the courts. What we are saying is that in view of the particular circumstances, the lower court was amply warranted in refusing to interfere in the existing controversy.

Only one other projected issue needs noting, namely: Does equity have jurisdiction of such a complaint? Judge SPAETH answered this question effectively and correctly in the court below.

Decree affirmed. Each side to pay own costs.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree with the majority that the court below did not err in refusing to grant equitable relief, especially in light of the fact that the registration had already been held. However, it is not inappropriate that I take this opportunity to emphasize some of the elements necessary to sustain the validity of field registration.

It is settled law that all voter registrations must be conducted in such a manner that all members of the public have an equal and adequate opportunity to place their names on the voting lists. No preferences may be given nor disadvantages imposed upon any individual, political party or geographical area. And all facilities used for registration should be open to the public at large. This latter element was absent in *Devlin v. Osser*, 434 Pa. 408, 254 A. 2d 303 (1969), in which this Court concluded that "the right to register at a particular place was denied to all but a select few." *Id*. In addition, field registration must be fairly, impartially and equally allocated—as to the num-

ber of such designated registration days, their location and hours of operation—without advantage or discrimination to any segment of the voting population.

Further, the characteristics outlined are essential if the constitutional requirements mandated in the analogous one-man, one-vote decisions are to be fulfilled. In *Reynolds v. Sims*, 377 U.S. 533, 566, 84 S. Ct. 1362, 1384 (1964), the Supreme Court stated: "Diluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discriminations based upon factors such as race . . . or economic status." See *Butcher v. Bloom*, 415 Pa. 438, 203 A. 2d 556 (1964). In much the same way, the right to vote is diluted if one group of people is prejudiced by lack of reasonably equal access to voting registration locations. Nor may registrations be scheduled, allocated or operated in such places and at such times as to afford any favoritism or advantage to any residents, areas or political parties within the community.

The same requirements of fairness and equality which constitutionally protect the right to vote, in my view, apply equally to the opportunities for registration, since registration is an essential prerequisite to the right to vote. Thus, we must constantly be on guard to insure that such places and times of registration offer the same opportunity to all of the public to place their names among the eligible electorate. Otherwise, in effect, the right to vote is denied just as surely as if officials in charge of the election process arbitrarily selected every fifth person at the polling places and informed such individuals that they may not vote.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The complaint herein was directed entirely to the field and bus registration program being conducted

with respect to the registration of voters prior to the general election of 1968. Improper practices were alleged by plaintiffs, and an injunction was sought against defendants. The court entered its decree in favor of defendants on September 6, 1968. The program involved and with it the practices complained of were terminated on September 16, 1968. The election was held November 5, 1968. The appeal to this Court was taken on November 16, 1968.

It seems clear to me that this case is moot and that the Court should not now entertain it. If it is moot, it is improper to pass upon the exercise of discretion by the court below, that is, whether it did or did not err in refusing equitable relief. Even the threshold question of equitable jurisdiction is not now properly before us. Contrary to the situation in *Devlin v. Osser,* 434 Pa. 408, 254 A. 2d 303 (1969), there is here no evidence or agreement of the parties that there will be an early repetition of the practices in another registration period. I would dismiss the appeal on the ground of mootness.