Joseph GIGLIOTTI et al., Plaintiffs,

v.

**REDEVELOPMENT AUTHORITY OF the CITY OF NEW CASTLE et al.,
Defendants.**

Civ. A. No. 73–311.

United States District Court,
W. D. Pennsylvania.

July 24, 1973.

Felix DeGuilio, Pittsburgh, Pa., for plaintiffs.

Gamble & Verterano, New Castle, Pa., Marvin Luxenberg, Ellwood City, Pa., for defendants.

## OPINION

DUMBAULD, District Judge.

The complaint in the case at bar is brought under the familiar civil rights provisions of 28 U.S.C.A. § 1343(3) and 42 U.S.C.A. § 1983.[1] It alleges that defendant Redevelopment Authority deposited "less money for compensation for the property taken than its value as required by the 5th Amendment" and that said defendant also used the Pennsylvania Eminent Domain Code "for a purpose other than that for which it was intended and enacted into law, thereby depriving [plaintiffs] of just compensation as required by the 5th Amendment." Defendant sheriff is charged with appearing at plaintiffs' premises with arms and teargas canisters as well as a moving van and ambulance staffed with a physician; and with taking possession of the premises.

The recitals of paragraphs 1–16 are then incorporated by reference into five counts. Count I complains that the daughter-plaintiff suffered "injuries to her person" causing hospitalization and lost wages. Count II makes the same claim on behalf of the wife-plaintiff. Count III makes a similar claim on behalf of husband-plaintiff, as well as a claim for money spent for relocation of the family and hospitalization of the wife and daughter, as well as a claim for loss of consortium. Count IV alleges deprivation of property "without just compensation." Count V alleges mental anguish.

Defendants have filed motions to dismiss.

■■ The first ground asserted is that the action is barred by the statute of limitations. The eviction occurred on June 25, 1970, and the suit was filed on April 17, 1973. Inasmuch as the wording of Counts I, II, III and V follows the familiar pattern of a tort case for personal injury, indeed uses the express language "injuries to her person" ["his" in Count III, with other incidental claims of the customary sort], it is clear that these counts are barred by the two-year limitation provided for such torts by P. S. 34.[2] The pertinent Pennsylvania statute applies since the Civil Rights provisions do not provide their own stat-

1. Section 1343 is jurisdictional; section 1983 is the substantive provision. Dumbauld, "Federal Jurisdiction in Civil Rights Cases: A New View", 25 Rutgers Law Review (Summer, 1971) 545, 547–48.

Section 1983 provides: "Every person who . . . subjects . . . any citizen . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured."

2. "Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards." Other periods are provided for other types of action. 12 P.S. 34.

ute of limitations. Conard v. Stitzel, 225 F.Supp. 244, 246 (E.D.Pa.1963).[3]

■ Next, the sheriff must be dismissed as a party since the record shows that he was merely acting pursuant to direction of the court in the execution of a writ. Lockhart v. Hoenstine, 411 F.2d 455, 460 (C.A. 3, 1969). This writ, doubtless the equivalent of the venerable *habere facias possessionem*, is specifically authorized in condemnation cases by the Eminent Domain Code. 26 P.S. § 1–407.[4] In the case at bar, the Court had expressly refused a stay of the writ.

■ The fact that the sheriff's force were armed for all eventualities, and even provided medical facilities for emergencies, does not affect the legalities of the situation. This was merely prudent precaution. The newspapers are filled with stories of home owners who defend their "castle" [5] by rifle or shotgun, like the pioneer forefathers who won our Commonwealth from the Indians. And if the number of deputies was larger than actually necessary, this was the same wise generalship which led George Washington to assemble a mighty force in order to subdue the Whiskey Rebellion.

We turn now to the meat of the case, which is a claim of deprivation of just compensation.

■■ It should first be noted that the Fifth Amendment (and hence the Civil Rights provision, 42 U.S.C. § 1983) does not fix any time limit for payment of "just compensation." We know that condemnation cases in this District have required considerable time. The Constitution likewise does not require any payment to be made in advance of the taking, though it is customary for the United States, or other condemnor, to make a payment into court of what it estimates it is certainly liable for.

■ A mere difference of opinion between the condemnor and the land owner with respect to what the property is worth does not amount to a taking without due process or without just compensation.

■ Even an inadequate award after judicial determination would not be a violation of constitutional rights. As Justice Holmes said in Chicago Life Ins. Co. v. Cherry, 244 U.S. 25, 30, 37 S.Ct. 492, 493, 61 L.Ed. 966 (1917): "Whenever a wrong judgment is entered against a defendant his property is taken when it should not have been, but whatever the ground may be, if the mistake is not so gross as to be impossible in a rational administration of justice, it is no more than the imperfection of man, not a denial of constitutional rights." The same revered judge said in McGovern v. New York, 229 U.S. 363, 370, 33 S.Ct. 876, 876, 57 L.Ed. 1228 (1913), that "not every judgment by which a man gets less than he ought, and in that sense is deprived of his property" constitutes deprivation of due process of law.

■ So the failure to deposit in advance as much money as plaintiffs want-

---

3. This cogent opinion was written by the late Circuit Judge Freedman, then on the District bench.

4. "The condemnor, after the expiration of the time for filing preliminary objections by the condemnee to the declaration of taking, shall be entitled to possession or right of entry upon payment of, or a written offer to pay to the condemnee, the amount of just compensation as estimated by the condemnor. If a condemnee thereafter refuses to deliver possession or permit right of entry, the prothonotary upon praecipe of the condemnor shall issue a rule, returnable in five days after service upon the condemnee, to show cause why a writ of possession should not issue, upon which the court, unless preliminary objections warranting delay are pending, may issue a writ of possession conditioned upon payment to the condemnee or into court of such estimated just compensation and on such other terms as the court may direct."

5. See Miller v. United States, 357 U.S. 301, 307, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

ed for their property is not a violation of the Civil Rights provision.[6]

■ The same is true of plaintiffs' other allegation, that the authority was condemning for an improper purpose. Plaintiffs waived this issue by failing to file preliminary objections as authorized by the Eminent Domain Code, 26 P.S. § 1–406.[7]

Moreover, whatever a social philosopher may feel in the exercise of hindsight with regard to the hardship and folly manifested in certain "redevelopment" programs, there has never been a case where the legislative determination of what constitutes a proper public use has been judicially overruled.[8] Berman v. Parker, 348 U.S. 26, 34, 75 S.Ct. 98, 99 L.Ed. 27 (1954), is a striking case. So is Crawford v. Redevelopment Authority, 418 Pa. 549, 554–556, 211 A.2d 866 (1965).

■ Thus in the absence of any constitutional rights of which defendant Authority deprived plaintiffs, there is no cause of action stated under the Civil Rights provision, and the motion to dismiss must be granted.[9]

The action against the individual board members of the Authority must also be dismissed because of the lack of any specific allegations of any actions by themselves other than collectively as the Authority's board.

6. Similarly, it is settled law that mere tort claims and suits to recover property are not civil rights cases. Fletcher v. Hook, 446 F.2d 14, 15 (C.A.3, 1971); Carter v. Chief of Police of Red Bank, 437 F.2d 413, 415 (C.A.3, 1971); Cisneros v. Cavell, 437 F.2d 1202, 1203 (C.A.3, 1971); Isenberg v. Prasse, 433 F.2d 449 (C.A.3, 1970); United States ex rel. Gittelmacker v. County of Philadelphia, 413 F.2d 84, 87 (C.A.3, 1969); Screws v. United States, 325 U.S. 91, 101, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

7. "Preliminary objections shall be . . . the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the se-

curity; . . . Failure to raise these matters by preliminary objections shall constitute a waiver thereof."

8. See Dumbauld, The Bill of Rights and What It Means Today (1957) 99–100.

9. Hence we do not reach the ticklish issue of "abstention" [see Clark v. Ellenbogen, 319 F.Supp. 623, 624–625 (W.D.Pa. 1970)], noting only that an award of just compensation to plaintiffs will doubtless in due course issue as a consequence of the pending proceeding in State court, where plaintiffs have sought delay rather than a speedy trial. We note also that litigation regarding rights in land is one that was recognized as a peculiarly proper subject for State adjudication even in pre-*Erie* days.