Leo Realty Company, Appellant, *v.* Redevelopment Authority of the City of Wilkes-Barre, Appellee.

Argued April 1, 1974, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Jerry B. Chariton,* with him *Louis Shaffer,* for appellant.

*Donald D. McFadden,* with him *Flanagan, Doran, Biscontini & Shaffer,* for appellee.

OPINION BY JUDGE KRAMER, June 4, 1974:

This is an appeal filed by Leo Realty Company (Leo) from an order of the Court of Common Pleas of Luzerne County, dated June 15, 1973, wherein the preliminary objections filed by Leo to the declaration of taking filed by the Redevelopment Authority of the City of Wilkes-Barre (Authority) were dismissed.

Prior to 1968, Leo owned and operated a warehouse on South State Street in Wilkes-Barre, apparently for the warehousing of the goods and merchandise of Landau's Furniture Store. The exact relationship between Leo and the furniture store is not explained in the record other than the president of Leo stated that the operation of the warehouse was essential to the carrying on of his business, which he identified as Landau's Furniture Store. It was stipulated for the record that in December 1968 Leo was dispossessed of its warehouse property on State Street, and that through the assistance of the Authority, Leo was relocated in May or June of 1969 to the premises on North Wells Street in

Wilkes-Barre, which are the subject matter of this proceeding. On January 17, 1969, the Planning Commission of the City of Wilkes-Barre approved an area, including Leo's North Wells Street property, for rehabilitation as an urban renewal area. Public hearings were held in April of 1969 and May of 1971. On December 3, 1971, the Authority filed a declaration of taking describing Leo's North Wells Street property, which was served on Julius Landau, president of Leo, on December 10, 1971. The property was posted on December 8, 1971, and Leo was given notice to "quit, surrender, and deliver up" its property.

On December 30, 1971, Leo filed preliminary objections in which it: (1) questioned the sufficiency of the bond (this issue was withdrawn); (2) challenged whether its property was in a blighted area; (3) challenged whether the proposed taking was for the public use; and (4) alleged that the proposed taking was unjust and unwarranted because the property in question was owned by Leo as the result of a relocation caused by a prior condemnation.

Depositions on these preliminary objections and an answer filed thereto by the Authority were taken and presented to the court below for disposition of the preliminary objections. The court below, in dismissing Leo's preliminary objections, found that although Leo's building was structurally sound, it was located in an area which had been deemed to be blighted because of "environmental deficiencies." The lower court determined that the action of the Authority in condemning Leo's property was not unreasonable and was not made in bad faith. It also determined that the Authority had followed all of the procedural and due process provisions of the Eminent Domain Code, Act of June 22, 1964, Sp. Sess., P. L. 84, *as amended*, 26 P.S. §1-101 et seq.

Leo has presented issues to this Court which were not raised by the preliminary objections, and although the court below passed upon such issues, this Court will merely mention in passing that the established law in this Commonwealth is that structurally sound buildings, in an area properly declared to be a blighted area, are subject to condemnation. *See Crawford v. Redevelopment Authority,* 418 Pa. 549, 211 A. 2d 866 (1965); *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority of Pittsburgh,* 394 Pa. 194, 146 A. 2d 724 (1958); *Oliver v. Clairton,* 374 Pa. 333, 98 A. 2d 47 (1953); and *Golden Dawn Shops, Inc. v. Philadelphia Redevelopment Authority,* 3 Pa. Commonwealth Ct. 314, 282 A. 2d 395 (1971). *Crawford, supra,* teaches us that "[t]he power of discretion over what areas are to be considered blighted is solely within the power of the Authority. The only function of the courts in this matter is to see that the Authority has acted not in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the Authority do not violate any of our constitutional safeguards." 418 Pa. at 554, 211 A. 2d at 868. There is nothing in this record which would permit us to conclude that the Authority in this case has violated any of these guidelines.

Leo contends that the notice which was served upon it failed to meet the statutory requirements of Section 405 of the Eminent Domain Code, 26 P.S. §1-405. Specifically, Leo complains that subsection (c) contains 12 itemized requirements of the notice which were not met. We have carefully compared the 12 requirements with the notice which Leo received and conclude that each and every one of the 12 requirements was satisfied by said notice.

Lastly, Leo contends that because it had been relocated by this same Authority under a prior condemna-

tion some four years before, the Authority was prohibited from condemning the North Wells Street property. Leo argues that the very occurrence of the prior condemnation and relocation taints the present condemnation as being arbitrary and an act of bad faith. Although we sympathize with Leo concerning the predicament in which it finds itself (the record establishes that there is a scarcity of property which could be used for Leo's purposes in the city of Wilkes-Barre, thereby making further relocation difficult, or even impossible), we are powerless to assist Leo. While the court below made mention that there was a conflict in the testimony on whether Leo had been advised of the possible condemnation of its North Wells Street property at the time it purchased the same, the court failed to resolve the matter. This failure, however, is not fatal because there was no showing of an act on the part of the Authority which would amount to arbitrariness, capriciousness, or bad faith. Absent such a showing, there is no statutory authority for the court below or this Court, to void a condemnation merely because the same Authority had previously condemned another property of the condemnee, and in addition had assisted the condemnee in relocating to the subsequently condemned property. It is well recognized that urban renewal takes place over long periods of time and through many stages of development. That part of a city which may have no need of redeveloping today may be in dire need four years later. The declared legislative policy may be found in the Urban Redevelopment Law, Act of May 24, 1945, P. L. 991, §2, as amended, 35 P.S. §1702, wherein it is stated: "Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the health, safety and welfare of the inhabitants thereof by the creation of bodies corporate and politic to be known as Redevelopment Authorities, which shall exist and operate for the public purposes

of elimination of blighted areas through economically and socially sound redevelopment of such areas, as provided by this act, in conformity with the comprehensive general plans of their respective municipalities for residential, recreational, commercial, industrial or other purposes, and otherwise encouraging the provision of healthful homes, a decent living environment and adequate places of employment for the people of this Commonwealth. Such purposes are hereby declared to be public uses for which public money may be spent, and private property may be acquired by the exercise of the power of eminent domain."

It was within the spirit of this declaration that this Authority proceeded to redevelop the area of the city of Wilkes-Barre wherein Leo's property existed. We can sympathize with Leo in its frustration over having been already relocated once, only to find itself again subject to the awesome governmental power of eminent domain. Perhaps the only reassurance we can make to Leo is that it has a constitutional right to be compensated for whatever damages it suffers as the result of this condemnation.

In summary, we make note that we are not in full accord with the reasoning as set forth in the opinion of the court below. This is not a matter of whether a municipality was attempting to eliminate a nonconforming use for zoning purposes. Rather, this case represents a typical urban renewal development project whereby to eliminate blight in an area certain properties which might be deemed otherwise structurally sound and aesthetically desirable, must give way to the superior power of our State government, under its police powers, to redevelop the entire area for the better uses of its citizens. In carrying out the legislative intent, it may be necessary in some instances to condemn some acceptable properties while leaving others. So long as the condemning authority does not act in an ar-

bitrary or capricious manner, or act in bad faith, the courts should not interfere with the discretion given to them by the Legislature. For these reasons we affirm the order of the court below dismissing Leo's preliminary objections, and the matter can now proceed under the provisions of the Eminent Domain Code for the ultimate purpose of determining Leo's damages, if any.

Judge CRUMLISH, JR. concurs in the decision only.

––––––––

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. My reading of the record leads me to the uncomfortable conclusion that the appellant's property was improperly condemned in order to eliminate a nonconforming business use in an area zoned residential. The lower court's opinion supports this conclusion when it frankly admits that zoning considerations were a principal reason for the taking. This is how the lower court stated it: "In the specific case of Leo Realty, a principal reason for the taking is that the premises constitute *a use which fails to conform with present or contemplated zoning.* The Authority wants to demolish the building on the Leo Realty premises and to use the land for a public playground in an area zoned for single family use. In such an area it is the Authority's position that heavy truck traffic to and from the warehouse located on condemnee's property constitutes an environmental deficiency." (Emphasis added.)

The majority is satisfied that "[t]his is not a matter of whether a municipality was attempting to eliminate a nonconforming use for zoning purposes." Not being so satisfied, I must dissent.