544 A.2d 87.

In The Matter of: Condemnation by Urban Redevelopment Authority of Pittsburgh etc. E-V Company, a partnership composed of Emil F. Kehr and Vincent E. Malone and Keller Office Equipment Company, Appellants.

Argued March 23, 1988, before President Judge CRUMLISH, JR., and Judges MACPHAIL, BARRY, COLINS, PALLADINO, MCGINLEY and SMITH.

*Thomas J. Dempsey,* for appellants.

*George R. Specter,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., July 8, 1988:

E-V Company and its lessee Keller Office Equipment Company (hereinafter collectively referred to as "Condemnees") appeal an Allegheny County Common Pleas Court order overruling their preliminary objections to the declaration of taking filed by the Urban Redevelopment Authority of Pittsburgh (Authority).

E-V, a partnership whose principals are also the shareholders of Keller, purchased the subject property in 1977, allegedly without notice that it was situated within an area certified as blighted since 1964.

The City of Pittsburgh Planning Commission (Commission) originally issued a certificate of blight in 1964 for portions of the Lower North Side section of the City as a step in the ongoing "Pittsburgh Renaissance." How-

ever, no redevelopment activity was taken pursuant to this certification.

In October 1971, the Commission issued a new blight certificate for portions of the same area, which included the Condemnees' property. This newly certified section became known as the North Shore Redevelopment Area. Pursuant to the latter certification, and in compliance with the statutory scheme set forth in the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. §§1701-1719, the Authority prepared the North Shore Redevelopment Proposal and submitted it to the Commission for review. The Commission approved the Proposal and authorized its submission to the City Council of Pittsburgh (Council). After a public hearing in April 1972, Council voted to approve the Proposal on May 5, 1972, thereby empowering the Authority to take such action as may be necessary for its implementation.

The Authority engaged in various redevelopment activities throughout the following years, and in October 1981, filed the instant declaration of taking for the property. The Condemnees filed preliminary objections which essentially challenged the propriety of the blight certification and the constitutionality of the certification and condemnation procedures under due process principles of the United States and Commonwealth Constitutions. After submission of deposition testimony and exhibits, the trial court overruled the preliminary objections. Condemnees presently appeal to this Court.

Our scope of review in eminent domain cases is limited to a determination of whether the trial court's decision evidences an abuse of discretion or error of law. *Spory Appeal,* 54 Pa. Commonwealth Ct. 17, 419 A.2d 804 (1980). With respect to judicial review in redevelopment authority condemnation cases, the Pennsylvania Supreme Court stated in *Crawford v. Redevelopment*

*Authority of County of Fayette,* 418 Pa. 549, 554, 211 A.2d 866, 868 (1965):

> The power of discretion over what areas are to be considered blighted is solely within the power of the Authority. The only function of the courts in this matter is to see that the Authority has not acted in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the Authority do not violate any of our constitutional safeguards.

(as quoted in *Goodwill Industries of Central Pennsylvania, Inc. Appeal,* 30 Pa. Commonwealth Ct. 273, 276, 373 A.2d 774, 776 (1977)).

The Condemnees' primary contention is that the common pleas court hearing provided after the declaration of taking—almost ten years after the blight certification[1]—does not satisfy due process standards in that it was not afforded at a "meaningful time and in a meaningful manner," *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). They argue that the substantial time lapse rendered an effective challenge to the certification practically impossible because there are no available witnesses with firsthand knowledge who are able to recall the planning and certification processes.

Without specifically delineating the requirements of due process owed to all property owners affected by a blight certification, we conclude that the process afforded the Condemnees in this case did not violate their constitutional rights.

---

[1] At the outset, we conclude that the relevant certification for the purposes of determining the legal issues in this case is the 1971 certificate of blight. Although the subject property was within the area previously certified in 1964, we deem that certification to have been superseded by the 1971 certification.

First, we emphasize that this is not a case where the Condemnees were denied all opportunity to challenge the blight certification. The Condemnees were given the opportunity to meet their burden of proving that the certification was arbitrary, capricious or made in bad faith.[2] They had eleven months subsequent to the declaration of taking to obtain discovery but sought only to review the Authority's files and to take the deposition of the Authority's engineering consultant, Kenneth Ira Britz. The Condemnees' bare assertions, without substantiation, that critical witnesses are unavailable or unable to competently testify about the 1971 certification are insufficient for us to conclude that there was an unconstitutional violation of due process.

The Condemnees' argument is further weakened by the fact that the Authority produced, and the Condemnees cross-examined, at least two witnesses who were intimately involved with the certification activities and decision-making process.

The first witness was William Waddell, a City Planning Department employee since 1965 and who in 1970 was appointed "city planner" for the City's section encompassing the North Shore Redevelopment Area. He indicated that the Planning Department was in effect

---

[2] The Condemnees contend, *inter alia,* that Keller was not served with the declaration of taking within thirty days of its filing, as required by Section 405 of the Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P.L. 84, *as amended,* 26 P.S. §1-405. The Authority sought to cure this procedural problem by obtaining a subsequent reinstatement of the declaration with service on Keller within thirty days thereof. While the Eminent Domain Code does not provide for such a procedure, we decline to hold that the taking is invalid for lack of timely service. It is undisputed that E-V was properly served and that the partners of E-V and the shareholders of Keller are one and the same. Under these circumstances, where Keller points to no resultant prejudice, we deem this to be of no consequence.

the staff which performed the field work for the Commission. In this position, Mr. Waddell acted as the direct liaison between the Planning Department, the Authority and the North Shore community on redevelopment activities during the certification period.[3] More importantly, he personally prepared the "Basic Conditions Report" which analyzed and made recommendations as to whether the area's conditions met the blight criteria set forth in the Urban Redevelopment Law, 35 P.S. §1702.[4] This report formed the basis of the Planning Commission's decision to issue the certificate of blight.

There was also the testimony of Jan Krygowski, a Planning Department employee during the pre-certification period and the Planning Director of the Authority in 1970, with responsibility for all redevelopment planning activities. Significantly, Mr. Krygowski was involved with the start-up phase of the North Shore redevelopment project.[5] He personally gathered data and conducted studies on the North Shore area during the certification period.[6] Like Mr. Waddell, Mr. Krygowski was present at the Planning Commission meetings, as well as the community meetings conducted during the certification process.

In addition, the Condemnees had access to all of the Authority's files pertaining to the North Shore redevelopment project including memoranda and studies relied upon in the blight certification process.

Following our thorough review of the record testimony and evidence, we can discern no indication that the mere lapse of time has so disabled the Condemnees

---

[3] Deposition of William B. Waddell, 11/17/82, pp. 12-14.
[4] *Id.* at pp. 14-18.
[5] Deposition of Jan Krygowski, 11/20/82, pp. 20-21.
[6] *Id.* at 31-32.

in proving their allegations as to rise to the level of a constitutional violation.

The Condemnees next contend that substantial changes and renewed vitality in the area since 1971 render the blight certification "stale." Thus, they argue, the certification is an improper basis for the condemnation. They suggest that there should have been an updated determination of blight nearer in time to the taking. They also argue that the Authority abandoned the redevelopment project sometime after the blight certification and is therefore estopped from acting pursuant to it.

We must reject these contentions inasmuch as they fail to recognize the trial court's findings that establish that the Authority *continually* engaged in redevelopment activities throughout the post-certification period and up to the time of the present taking. *In the Matter of: Condemnation By Urban Redevelopment Authority of Pittsburgh,* (No. GD 81-27642 Allegheny County Common Pleas Civil Division, filed February 21, 1986), slip op. at 5. Moreover, the broad eminent domain powers vested in redevelopment authorities, 35 P.S. §1712, require recognition that urban renewal cannot be accomplished overnight. As we stated in *Leo Realty Co. v. Redevelopment Authority of Wilkes-Barre,* 13 Pa. Commonwealth Ct. 288, 292, 320 A.2d 149, 152 (1974):

> It is well recognized that urban renewal takes place over long periods of time and through many stages of development. That part of a city which may have no need of redeveloping today may be in dire need four years later.

In the instant case, the Authority produced uncontradicted evidence that the area was blighted in 1971.[7]

---

[7] The Authority produced the expert testimony of Mr. Krygowski, who offered his opinion supporting the Commission's

Although changes occurred during the following years, it is the object of urban renewal to produce such changes and enhance the conditions of the redevelopment area. Hence, we cannot accept the Condemnees' assertion that the alleged changes required an updated certification in this case.

The Condemnees next contend that the Commission failed to act with deliberate, objective and unbiased judgment in issuing the blight certification in that it simply "rubber stamped" the recommendations of the planning staff. However, the Condemnees have failed to overcome the presumption that the Commission performed its duties in good faith. *Simco Stores v. Redevelopment Authority of Philadelphia,* 455 Pa. 438, 442, 317 A.2d 610, 613 (1974). Moreover, the testimony supports the findings that the Commission had access to numerous blight studies and reports upon which to base its determination, and that the Commission did not engage in arbitrary or capricious conduct.

We likewise reject the contention that the certification is void for vagueness due to the absence of specific and detailed findings by the Commission to support its determination. There is no statute or regulation requiring such findings. Moreover, such findings would serve no purpose inasmuch as the narrow judicial scope of review precludes inquiry into the wisdom of the Commission's determination of blight. *Crawford.*

As an alternative to their procedural due process arguments, the Condemnees contend that the Commission's blight certification constitutes an "adjudication" affecting property rights which, under the Local Agency

---

determination that the North Shore area was in fact "blighted" in 1971. Deposition of Jan Krygowski, 11/20/82, pp. 51-52. In view of Mr. Krygowski's testimony, we also reject the Condemnees' separate contention that the Authority failed to show that the certified area was in fact blighted.

Law, 2 Pa. C. S. §§105, 551-555, 751-754, requires notice, a record hearing and a written decision supported by specific findings and reasoning.

We addressed this issue in *Cass Plumbing & Heating Co. v. PPG Industries, Inc.*, 52 Pa. Commonwealth Ct. 600, 416 A.2d 1142 (1980). Therein, we agreed with the trial court's conclusion that a mere certification of blight is not an adjudication within the meaning of the Local Agency Law. *Id.*, 52 Pa. Commonwealth Ct. at 613, 416 A.2d at 1149. In so holding, we noted that the Condemnees' challenge to the blight certification could be fully litigated through the procedures provided under the Eminent Domain Code—*i.e.* the filing of preliminary objections to the declaration of taking. *Id.* That same procedure is available to the Condemnees in this case. As we stated in *Boehm v. Board of Education of School District of Pittsburgh*, 30 Pa. Commonwealth Ct. 468, 474, 373 A.2d 1372, 1375 (1977), "[t]he Local Agency Law . . . was enacted to provide a forum for the enforcement of statutory rights *where no procedure otherwise exists. . . .*" (Citation omitted; emphasis added.) We confirm our ruling in *Cass* and conclude that the Local Agency Law is inapplicable to the present case.

The Condemnees next contend that the taking is invalid because of impermissible discrimination in rehabilitation selection. They argue that they were denied the opportunity to rehabilitate their property as an alternative to condemnation. This contention, however, is simply not borne out by the record testimony and the caselaw. The Authority is not required to offer self-rehabilitation in every case, *Nixon Hotel, Inc. v. Redevelopment Authority of Butler*, 11 Pa. Commonwealth Ct. 519, 315 A.2d 366 (1974), but its decision to condemn must be based upon a proper public purpose, *Goodwill*. The testimony of John P. Robin, Chairman of the Au-

thority, supports the trial court's conclusion that the underlying reason for the condemnation was to effect the purpose of implementing redevelopment in the area.[8] Our review of the record discloses no indication that the Authority impermissibly denied the Condemnees any entitlement they may have to self-rehabilitation of their property.

The Condemnees' final contention is that the taking is invalid because the redevelopment proposal, which was cited in the Declaration of Taking as the justification for the condemnation, did not include their property on the list of properties to be acquired.[9]

Although the Condemnees' property was not on the above-referenced list, we deem this to be insignificant for the purpose of determining the validity of the taking. The Authority's chief consultant, Kenneth Britz, explained that the only purpose of this list was to reflect properties to be acquired *in that given year* in order to receive federal funds for that year.[10] Moreover, the testimony of Jan Krygowski establishes that the property was contemplated for acquisition since the inception of the redevelopment project.[11]

---

[8] Deposition of John P. Robin, 10/29/82, pp. 27-45.

[9] This issue was raised in the Condemnees' amended preliminary objections. The Authority contends that since the Condemnees failed to seek consent of counsel or leave of court to file the amended pleading, this issue was waived. We tend to agree with the Authority's position. Nonetheless, since our disposition of the issue will not affect the outcome of the case, and since the trial court found as facts that the amended pleading was filed and that the property was not on the above-referenced list, we will address the issue.

[10] Deposition of Kenneth Ira Britz, 10/13/82, pp. 15-16.

[11] Deposition of Jan Krygowski, 11/20/82, pp. 60-62.

Since we conclude that the trial court committed no error of law or abuse of discretion, we affirm the order overruling Condemnees' preliminary objections.

## ORDER

The order of the Allegheny County Common Pleas Court, No. GD 81-27642 dated February 21, 1986, is affirmed.