572 A.2d 250

In re Condemnation of Lands Situate and Being in the CITY OF SCRANTON, Pennsylvania, for the Elimination of Blighted Areas and the Replanning and Redevelopment of Such Area (Five Cases).

Appeal of James DALKIEWICZ.

Appeal of Leon WASSER and Elizabeth Wasser.

Appeal of KEYMALL, INC.

Appeal of Calvin S. MITTELMAN and Jerry I. Mittelman, Condemnees.

Appeal of Calvin S. MITTELMAN, Jerry I. Mittelman, Sidney Mittelman and Robert Mittelman, Condemnees.

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1990.

Decided March 8, 1990.

Reargument Denied April 19, 1990.

Peter J. Comerota, Scranton, for appellant, James Dalkiewicz.

Donald P. Dolan, Gregory J. Pascale, Scranton, with him, for appellants, Leon Wasser et al. and Keymall, Inc.

Gene E. Goldenziel, Needle & Goldenziel, Scranton, for appellants, Calvin S. Mittelman, Jerry I. Mittelman, Sidney Mittelman and Robert Mittelman.

W. Boyd Hughes, with him, Albert E. Nicholls, Jr., and Barbara J. O'Hara, Hughes, Nicholls & O'Hara, Scranton, for appellee.

Before CRUMLISH, Jr., President Judge, PELLEGRINI, J., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

This is a consolidated appeal from a decision of the Court of Common Pleas of Lackawanna County dismissing preliminary objections filed by five property owners (Condemnees)

to declarations of taking filed by the Scranton Redevelopment Authority (Redevelopment Authority) to condemn properties they owned on Lackawanna Avenue in the City of Scranton.[1] The declarations of taking were filed by the Redevelopment Authority to implement the Lackawanna Avenue Redevelopment Area (Project Area) which was adopted pursuant to the procedures set forth in the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701–1719.[1]

The redevelopment of the Project Area was initiated pursuant to Section 10 of the Urban Redevelopment Law, 35 P.S. § 1710, when, on January 19, 1988, the City of Scranton Planning Commission declared blighted an area in Scranton's central business district bounded by Cliff Street on the west, North Washington Avenue on the east, National Park Service on the south, and Center Street on the north. The Planning Commission based their decision on the "Report and Conditions and Blight Study, Lackawanna Avenue Redevelopment Avenue" prepared by Scranton's Planning Department and the "Structural Analysis Survey" prepared by Ronald Bielinski, an architect and structural engineer. Public hearings were held by the City Planning Commission as to whether the area should be designated as blighted. After hearings and review of the reports and supporting documentation provided, the Scranton Planning Commission declared the area to be blighted. On March 3, 1988, the Redevelopment Authority promulgated the proposed Redevelopment Plan which was then submitted to the Scranton City Council, which approved it May 18, 1988.

The Redevelopment Plan incorporated as part of the Plan initiatives undertaken by the City beginning several years prior to the certification of blight by the Scranton Planning Commission. Central to those initiatives and to the Redevelopment Plan was a mall to be developed by Scranton

---

1. Appellants–Condemnees are: James Dalkiewicz, 232 Lackawanna Avenue; Calvin and Jerry Mittelman, 220–222 Lackawanna Avenue; Calvin, Jerry, Sidney and Robert Mittelman, 218 Lackawanna Avenue; Leon and Elizabeth Wasser, 322 Lackawanna Avenue; and Keymall, Inc., 408 and 410 Lackawanna Avenue.

Mall Associates (Developer) on Lackawanna Avenue. To make this mall development possible, the City of Scranton, through its Office of Economic and Community Development, obtained funds from a variety of sources.

In October, 1986, Scranton received a 5.5 million dollar Urban Development Action Grant (UDAG) from the federal government to pay for parking improvements necessitated by the construction of the proposed mall. For other costs associated with the mall, Scranton received 4 million dollars in state funds and another 13 million dollar UDAG. Other financing included 55.9 million dollars in City guaranteed bonds, 5.6 million dollars in private investments, and 4.8 million dollars in federal loans. On August 1, 1988, the Redevelopment Authority and the City of Scranton entered into a Redevelopment Agreement with the Developer to construct the mall with the assistance of the previously mentioned public financing.

After conducting a lengthy hearing on Condemnees' preliminary objections, including whether the certification of blight by the Planning Commission was proper, the trial court dismissed the preliminary objections. The instant appeal followed.

On appeal, Condemnees raise the following issues: (1) whether the redevelopment process was invalid because there was no compliance by the Planning Commission with the requirements of the Local Agency Law when it certified the area as blighted; (2) whether, because a private owner is ultimately going to own and develop Condemnees' property, the declaration of taking is unconstitutional because it is for a private as opposed to a public purpose; (3) did the Redevelopment Authority act in bad faith and violate Condemnees' equal protection rights by offering other property owners more for their property than the amounts which they would have received as calculated by the announced formula and by not offering Condemnees compensation on the same basis; and (4) the bare bond filed with each

declaration of taking was insufficient because the Redevelopment Authority has no taxing power.[2]

In eminent domain cases, our scope of review is limited to a determination of whether the trial court committed an abuse of discretion or an error of law. *E–V Company Appeal,* 117 Pa. Commonwealth Ct. 475, 477, 544 A.2d 87, 88 (1988). Furthermore, our review of the Urban Redevelopment Law condemnation cases is to see that the Authority has not acted in bad faith or arbitrarily, that it has followed the mandated statutory procedures in preparing a Redevelopment Plan, and that there are no constitutional violations. *Crawford v. Redevelopment Authority of the County of Fayette,* 418 Pa. 549, 544, 211 A.2d 866, 868 (1965); *E–V Company,* 117 Pa. Commonwealth Ct. at 478, 544 A.2d at 89 (1988).

Condemnees' assertion that the Scranton Planning Commission's certification of blight constitutes an "adjudication" under the Local Agency Law, 2 Pa.C.S. §§ 105, 551–555, 751–754, requiring notice, a record hearing and written findings of fact and conclusions of law, has been previously addressed by this court.[3] Recently, in *E–V Company* where we affirmed *Cass Plumbing & Heating Co. v. PPG Industries, Inc.,* 52 Pa. Commonwealth Ct. 600, 416 A.2d 1142 (1980), this court held that the mere certification of blight is not a Local Agency Law adjudication

**2.** Condemnee Dalkiewicz also contends that he was not properly served with the declaration of taking. However, a review of the record indicates that he did not raise this issue in his preliminary objections and he participated in the hearing. Accordingly, this issue has been waived.

**3.** Condemnee citation to Section 12.1(e)(2) of the Urban Redevelopment Law, added by the Act of June 23, 1978, P.L. 556, *as amended,* 35 P.S. § 1712.1(e)(2), for the proposition that each property owner is entitled to notice and can appeal from the Planning Commission's certification of an entire area is erroneous. Section 12.1 was enacted by the General Assembly to acquire property, including property in a redevelopment area, if it were deemed to be blighted under criteria that are different than those needed to be met when a Planning Commission certifies an area as blighted. *See* Section 2 of the Urban Redevelopment Law, 35 P.S. § 1702.

because no rights of the property owner at the time of the certification of blight are affected.

Under the scheme set out in the Urban Redevelopment Law, a certification of blight is merely an internal finding that certain physical conditions exist as defined by the Urban Redevelopment Law in the project area that make the area deemed to be blighted. This finding authorizes the Redevelopment Authority to study an area that may or may not result in the enactment of a Redevelopment Plan. 35 P.S. § 1710. When the proposed Plan, as prepared by the Redevelopment Authority, is ultimately presented to the governing body, the governing body is free to reject the Plan on any ground, including a belief that conditions in the Project Area do not warrant the redevelopment of the area. 35 P.S. § 1710(h). Unless the governing body approves the Plan, the Planning Commission's certification of blight and the Redevelopment Authority's approval of the Plan are merely beginning and middle to a process that will have no end.

Even if the certification of blight could somehow be considered an adjudication, the provisions of the Local Agency Law would not apply. The Local Agency Law was not enacted to substitute a new review process where a statutory method of appeal was already provided. 2 Pa.C.S. § 751(b). *See also Boehm v. Board of Education of School District of Pittsburgh,* 30 Pa. Commonwealth Ct. 468, 474, 373 A.2d 1372, 1375 (1977). Because Section 406(b) of the Eminent Domain Code Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. 1--406(b) provides that the exclusive method to challenge power or the propriety of the condemnation must be challenged by preliminary objections to the declaration of taking, a Local Agency Law appeal does not lie. *Faranda Appeal,* 420 Pa. 295, 216 A.2d 769 (1966).

■ Next, Condemnees contend that the Redevelopment Authority unconstitutionally violated their rights under the 5th Amendment of the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution. They

contend that the Redevelopment Authority's taking of their property and then subsequently conveying it to a developer, a private party, to build a mall, advances the developer's private interest, not a public purpose. The courts of this Commonwealth have consistently rejected similar challenges to the Urban Redevelopment Law. In *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 54 A.2d 277 (1947), which also involved the redevelopment of an area with the subsequent turnover of the area to a private developer, the Supreme Court rejected the claim that the taking of private property for that reason was not a public purpose. It stated:

> [It] being claimed that thereby the final result of the operation is to take property from one or more individuals and give it to another or others. Nothing, of course, is better settled than that property cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another, even though there be involved in the transaction an incidental benefit to the public. But plaintiff misconceives the nature and extent of the public purpose which is the object of this legislation. That purpose, as before pointed out, is not one requiring a continuing ownership of the property ... in order to carry out the full purpose of that act, but is directed solely to the clearance, reconstruction and rehabilitation of the blighted area, and after that is accomplished, the public purpose is completely realized. *When, therefore, the need for public ownership has terminated, it is proper that the land be re-transferred to private ownership, subject only to such restrictions and controls as are necessary to effectuate the purpose of the act.* It is not the object of the statute to transfer property from one individual to another; such transfers, so far as they actually occur, are purely incidental to the accomplishment of the real or fundamental purpose. (Emphasis added.) *Id.*, 357 Pa. at 340, 54 A.2d at 282–283.

The court added:

Indeed, so far from it being legally objectionable that property acquired by eminent domain be resold or re-transferred to private individuals after the purpose of the taking is accomplished, the law actually requires that property be taken by eminent domain only to the extent reasonably required for the purpose for which the power is exercised (Bachner v. Pittsburgh, 339 Pa. 535, 539, 12 A.2d 363, 365) and upon cessation of the public use the public ownership is properly discontinued. *Nor does the taking lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited.* (Emphasis added.) *Id.*, 357 Pa. at 341, 54 A.2d at 283.

*See also Schenck v. Pittsburgh*, 364 Pa. 31, 70 A.2d 612 (1950); (where a developer paid 100% of acquisition costs as well as administrative costs of the Redevelopment Authority incurred in carrying out the project); *Condemnation by the Redevelopment Authority of the City of Harrisburg*, 30 Pa. Commonwealth Ct. 273, 373 A.2d 774 (1977). *A Condemnation Proceeding In Rem by Redevelopment Authority of the City of Philadelphia*, 19 Pa. Commonwealth Ct. 272, 339 A.2d 885 (1975). The trial court found and there is more than substantial evidence in this record that the area is certified as blighted, and that the purpose of the Redevelopment Plan was to eliminate this blight.

■ Condemnees also claim that the Redevelopment Authority acted in bad faith and violated the Equal Protection Clause of the United States Constitution because it offered certain property owners what they contend is greater compensation than they are being offered for their property. This claim is based on the Redevelopment Authority's announced intention to pay all property owners in the Project Area 150% of the appraised value as determined by the Redevelopment Authority's real estate broker. Because several property owners settled for substantially in excess of the 150% of the value set forth by the Redevelopment Authority, and the Redevelopment Authority refuses to

negotiate with them on that basis, Condemnees assert that the Redevelopment Authority is acting in bad faith and violating their equal protection rights.

This assertion that Condemnees' equal protection rights were violated is based on the erroneous assumption that when an appraiser gives an opinion as to fair market value, his opinion is infallible. This leads them to the conclusion that by settling higher than the amount suggested by the initial calculation, that the 50% bonus must have changed, rather than simply that the initial appraisal was countered by an appraisal by property owners that the initial appraisal was not accurate, or that elements of compensation allowed under the Eminent Domain Code, were not included in the appraiser's determination of fair market value. Each property is unique, and to increase the offer for one property and not the other may simply be the result of the normal negotiation that takes place between Condemnor and Condemnee as to whose appraiser's value is correct. When the parties cannot agree on compensation, the Board of Viewers and the trial court, with or without a jury, make this decision.

Moreover, it is not a condition precedent that a public body in order to file a declaration of taking must have previously attempted to acquire the property through negotiation. *Simco Stores, Inc. v. Philadelphia Redevelopment Authority,* 8 Pa. Commonwealth Ct. 374, 302 A.2d 907 (1973), *affirmed,* 455 Pa. 438, 317 A.2d 610 (1974); *Swartz v. Pittsburgh Public Parking Authority,* 63 Pa. Commonwealth Ct. 434, 439 A.2d 1254 (1981).

Having said all that, Condemnees' claim cannot be raised in preliminary objections. Section 406(a) of the Eminent Domain Code, 26 P.S. § 1–406(a), provides that preliminary objections to the declaration of taking shall be the sole method to challenge:

(1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4)

the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

Preliminary objections filed pursuant to Section 406(a) only authorize challenges to the condemnor's power or purpose to take the property which includes compliance with statutorily mandated procedures, as well as technical challenges such as service or sufficiency of bond. It does not authorize challenges to the condemning authority's conduct in the settlement offers to other parties. *Simco Stores, Inc.*

Insofar as Condemnees' assertion that the Redevelopment Authority's security is insufficient because it is not backed by any taxing power nor is it backed by substantial assets is also not sustainable. Section 403 of the Eminent Domain Code, 26 P.S. § 1–403, authorizes a condemnor such as the Authority, which does not have the power of taxation, to file its bonds without security. This provision, however, does subject the bond to challenge through the filing of preliminary objections. A trial court can require security if it finds that the security is insufficient.

The trial court denied Condemnees' request for additional security, holding that the Developer had pledged the first 8 million dollars needed to fund acquisition of the Project Area, and, thereafter, the City of Scranton and the Developer agreed to share the acquisition costs equally. The City of Scranton has already set aside additional monies to meet its acquisition obligations, and, of course, it has the power to raise additional funds through taxation.

This court, in *Taking In Eminent Domain of Certain Parcels of Real Estate by the Redevelopment Authority of the City of Bethlehem,* 22 Pa. Commonwealth Ct. 487, 491, 349 A.2d 781, 784 (1976), held that even though a condemnor did not have the power to tax where sufficient funds were available from other sources to cover the costs, condemnation would constitute sufficient surety that a bond would not have to be filed. In any event, like other cases

186

where the trial court sets a bond, the judgment of the trial court as to the amount of the security will only be disturbed where there is a manifest abuse of discretion. *Seligsohn Appeal,* 410 Pa. 270, 189 A.2d 746 (1963).

For the reasons set forth in this opinion, the decision of the Court of Common Pleas of Lackawanna County in dismissing Condemnees' preliminary objections is affirmed.

## ORDER

AND NOW, to wit, this 8th day of March, 1990, the order of the Court of Common Pleas of Lackawanna County is affirmed.