In the Matter of the CONDEMNATION OF the SURFACE OF that CERTAIN TRACT OF LAND LOCATED IN the BOROUGH OF CENTRALIA, COLUMBIA COUNTY, PENNSYLVANIA, and Described in Columbia County Deed Book 451 at Page 899, in the Office of the Columbia County Recorder of Deeds in Bloomsburg, Pennsylvania, and Further Identified as 436 Troutwine Street, in the Borough of Centralia, Columbia County, Pennsylvania, by the Columbia County Redevelopment Authority, as Agent of the Department of Community Affairs of the Commonwealth of Pennsylvania, in Connection with the Acquisition of Surface Rights to Certain Real Properties Threatened by an Underground Mine Fire Located in and Around the Borough of Centralia and the Township of Conyngham, Columbia County, Pennsylvania.

Betty Noble, William P. Noble and Bonnie Hynoski, Appellants.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1994.

Decided April 28, 1995.

Lewis Kates, for appellants.

Robert Spielman, for appellee.

Before DOYLE and KELLEY, JJ., and SILVESTRI, Senior Judge.

KELLEY, Judge.

Betty Noble, William P. Noble and Bonnie Hynoski (hereinafter collectively referred to as "Condemnees") appeal from an order of the Court of Common Pleas of Columbia County (trial court) denying Condemnees' preliminary objections to the declarations of taking filed by the Columbia County Redevelopment Authority (CCRA) as agent of the Pennsylvania Department of Community Affairs (DCA). We affirm.

In 1983, the DCA and the CCRA initiated a program to voluntarily relocate residents of Centralia Borough (borough) due to an alleged threat to the public health and safety resulting from a fire in abandoned mine workings in the vicinity of the borough. The majority, but not all, of the residents chose to voluntarily relocate, sold their homes, and moved from the borough. A relatively small number of borough residents declined to relocate and continued to reside in the borough.

On February 18, 1992, attorneys for CCRA notified the remaining residents of the borough that as the result of the continuing threat to the public safety posed by the mine fire, CCRA, as the agent for the DCA, would acquire all of the remaining occupied properties in the borough by exercising the DCA's power of eminent domain. Thereafter, DCA and CCRA executed a contract wherein CCRA agreed to act as DCA's agent in relocating and acquiring the property of the remaining residents, businesses, and non-profit organizations of the borough who would be required to move from the mine fire area. Reproduced Record (R.) at 6a–26a. After the execution of the contract between CCRA and DCA, the CCRA adopted a resolution to proceed, in accordance with its contractual responsibilities and obligations to DCA, with the acquisition, by the initiation of eminent domain proceedings, if necessary, of the surface of all the remaining homes, business and non-profit buildings which were located with the borough. R. at 28a.

On January 28, 1993, the CCRA, as agent of the DCA filed declarations of taking with the trial court for the purpose of acquiring only the surface to certain parcels of real

property threatened by the underground mine fire located in and around the borough. R. at 2a–4a. The CCRA declared that the statutory authorization for the condemnations was set forth at 71 P.S. § 1049.4.[1] *Id.* Further, the CCRA declared that just compensation for the condemnations was secured by the power of taxation of the Commonwealth of Pennsylvania. *Id.*

In response, Condemnees and numerous other remaining residents of the borough filed identical preliminary objections to the declarations of taking. The preliminary objections raised the following issues:

1. The declarations of taking and the condemnations sought to be effected thereby are void because the CCRA, as the agent of the DCA, is acting ultra vires of its powers and the authority vested in it pursuant to and in accordance with the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. §§ 1701–1719.1.

2. The declarations of taking and the condemnations sought to be effected thereby are void to the extent that the DCA is deemed to be the condemnor because it does not have the power or right to acquire the properties sought to be acquired by the exercise of the right of eminent domain.

3. To the extent the DCA is deemed to be the condemnor, the declarations of taking and the condemnations sought to be effected thereby are void because it has not been delegated the authority to acquire property by the exercise of the right of eminent domain by the Commonwealth.

4. The declarations of taking filed in this case and the condemnations sought to be effected thereby are void because they constitute a taking of property without due

process of law and without proper security first being made in violation of the Untied States Constitution.

5. The declarations of taking and the condemnations sought to be effected thereby are void because they constitute a taking of property without proper security first being made in violation of the Pennsylvania Eminent Domain Code, Act of June 22, 1964, Special Session, P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903, and the Pennsylvania State Constitution.

R. at 32a–38a.

■ Without conducting an evidentiary hearing, the trial court denied Condemnees' preliminary objections to the declarations of taking based upon the record, the briefs and oral argument. Condemnees now appeal to this court.[2]

On appeal to this court, Condemnees raise the following two issues: (1) Whether a trial court has jurisdiction to dismiss preliminary objections to a declaration of taking in an eminent domain case without conducting an evidentiary hearing or otherwise affording a condemnee the opportunity to present evidence in support of the preliminary objections where the preliminary objections raised disputed issues of fact; and (2) Whether a redevelopment authority created pursuant to the Urban Redevelopment Law has the right to commit the Commonwealth's power to levy and collect taxes to secure a taking of private property.

In support of its argument that the trial court should have conducted an evidentiary hearing, the condemnees assert that factual issues were raised in their preliminary objections.[3] Specifically, condemnees contend that the preliminary objections challenge the taking on the grounds that the subject con-

---

1. Section 4 of the State Planning Code, Act of May 20, 1949, P.L. 1608, *as amended,* 71 P.S. §§ 1049.1–1049.11.

   Section 4 provides, in part, that:
   The Department of Community Affairs shall have the power, in the name of the Commonwealth, to exercise the right of eminent domain in the manner provided by law for the exercise of such right by cities or counties, as the case may be, of the same class as the city or county in which such department has approved the initiation of a project.

2. This court's scope of review of a trial court's order dismissing condemnees' preliminary objections is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Olson v. Whitpain Township,* 141 Pa.Commonwealth Ct. 270, 595 A.2d 706 (1991).

3. Section 406 of the Eminent Domain Code provides, in part, that "[i]f an issue of fact is raised, the court shall take evidence by depositions or otherwise." 26 P.S. § 1–406.

demned premises was not endangered and therefore did not fall within the compass of the contract and its acquisition. Condemnees argue that there first must be a certification that the area is blighted within the meaning and compass of the Urban Redevelopment Law. Condemnees base this assertion on their contention that the CCRA, having been created pursuant to the Urban Redevelopment Law, is empowered only to acquire by condemnation blighted property.

■ This court agrees that the CCRA was created pursuant to the Urban Redevelopment Law and that the law sets forth the authority for the CCRA to acquire blighted areas by eminent domain. *See* §§ 1–19.1 of the Urban Redevelopment Law, 35 P.S. §§ 1701–1719.1. This court also agrees that before the CCRA can acquire any property pursuant to the Urban Redevelopment Law, the area in question must first be certified as blighted. *Id.*

■ However, it is clear from the declaration of taking filed by the CCRA seeking to acquire the Condemnees' property by eminent domain that the CCRA was not acting pursuant to the Urban Redevelopment Law. The CCRA was acting as the agent of DCA and sought to acquire the Condemnees' property pursuant to section 4 of the State Planning Code which clearly gives the DCA the power, in the name of the Commonwealth, to exercise the right of eminent domain. 71 P.S. § 1049.4.

■ It is uncontradicted in this case that the CCRA was acting as an agent of the DCA when it filed the declarations of taking and that the CCRA had entered into a contract with the DCA to act as its agent for that purpose. It is well settled that the existence of the principal-agent relationship is determined by the agreement made by the parties defining the circumstances under which an agent may act for the principal. *Burnatoski v. Butler Ambulance Service*, 130 Pa.Commonwealth Ct. 264, 567 A.2d 1121, *petition for allowance of appeal denied*, 527 Pa. 603, 589 A.2d 693 (1989). Implicit in this relationship is consent by the principal that one may act on his or her behalf and subject to his or her control. *Id.*

In the present case, the contract entered into between the DCA and the CCRA provides that the CCRA is empowered, as the DCA's agent, to acquire the properties threatened by an underground mine fire and to relocate those residents who will be required to move from the mine fire area. R. at 6a. In addition, the resolution adopted by the CCRA shortly after entering into the contract with DCA provides that the CCRA, as the agent for DCA, shall acquire the properties through eminent domain if necessary.

Accordingly, it is clear that the intent of the agreement between the CCRA and DCA was that the CCRA was empowered with the authority to act on DCA's behalf in acquiring the remaining properties through the DCA's power of eminent domain. Further, this court has not found any provision in the State Planning Code or the Urban Redevelopment Law which would prohibit the DCA, as an agency of the Commonwealth, from contracting with another agency of the Commonwealth, to act as the DCA's agent, to assist the DCA in carrying out its statutory duties and obligations. Nor is there any prohibition in the Urban Redevelopment Law which precludes the CCRA from acting as DCA's agent. Accordingly, the CCRA was not acting ultra vires of its powers and the authority vested in it pursuant to the Urban Redevelopment Law.

As the CCRA was not acting pursuant to the Urban Redevelopment Law there was no need for a certification that the affected area was blighted. Accordingly, the trial court was not required to hold an evidentiary hearing pursuant to section 406 of the Eminent Domain Code to determine whether the area was in fact blighted within the meaning of the Urban Redevelopment Law.

■ Condemnees also contend that the trial court should have held an evidentiary hearing to determine whether the threat of the underground mine fire existed as of the date of condemnation because both the DCA and the CCRA are required to comply with the mandate of the Uniform Relocation Assistance and Real Property Acquisition Poli-

cies Act of 1970. 42 U.S.C. §§ 4601–4655.[4] The trial court determined that this issue had been waived due to Condemnees' failure to timely raise it in their preliminary objections. A review of Condemnees' preliminary objections filed herein reveal that the trial court was correct in concluding that this issue was not raised; therefore, pursuant to section 406 of the Eminent Domain Code, the issue is waived as all preliminary objections must be raised at one time and in one pleading. 26 P.S. § 1–406(c).

■ Condemnees' final argument is that the trial court was required to hold an evidentiary hearing to determine whether there was constitutionally sufficient security. We disagree.

Pursuant to section 403 of the Eminent Domain Code, 26 P.S. § 1–403, where a condemnor has the power of taxation, it shall not be required to file a bond with the declaration of taking. Herein, the CCRA as an agent of the DCA, is backed by the taxing power of the Commonwealth through the DCA, a Commonwealth agency.

This court has held that even though a condemnor does not have the power to tax, where sufficient funds are available from other sources to cover the costs, condemnation constitutes sufficient surety that a bond does not have to be filed. *See In re City of Scranton,* 132 Pa.Commonwealth Ct. 175, 572 A.2d 250, *petition for allowance of appeal denied,* 527 Pa. 619, 590 A.2d 760 (1990) (citing *Taking In Eminent Domain of Certain Parcels of Real Estate by the Redevelopment Authority of the City of Bethlehem,* 22 Pa.Commonwealth Ct. 487, 491, 349 A.2d 781, 784 (1976)). In the present case, the federal government has made funds available to the Commonwealth under the provisions of the Supplemental Appropriations Act of 1984, P.L. 98–181, 97 Stat. 1153, 1293 (1983) for the acquisition of the property and for the relocation of people in the borough which are threatened by the underground mine fire. *See* R. at 6a; 65a.

Accordingly, the order of the trial court denying Condemnees' preliminary objections to the declarations of taking is affirmed.

### ORDER

NOW, this 28th day of April, 1995, the order of the Court of Common Pleas of Columbia County, dated February 15, 1994, at No. 185 of 1993, is affirmed.

---

4. The stated policy of this federal act is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of programs or projects undertaken by a Federal agency or with Federal financial assistance. 42 U.S.C. § 4621(b). The primary purpose of the act is to ensure that such persons shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons. *Id.*