In Re: CONDEMNATION OF LANDS SITUATE AND BEING IN the CITY OF SCRANTON, Pennsylvania for the Elimination of Blighted Areas and the Replanning and Redevelopment of such Area.

**Redevelopment Authority of the City of Scranton, Appellant**

v.

**Mario Piccolino and Giuseppina Piccolino also known as Josephine Piccolino.**

In Re: Condemnation of Lands Situate and being in the City of Scranton, Pennsylvania for the Elimination of Blighted Areas and the Replanning and Redevelopment of such Area.

**Redevelopment Authority of the City of Scranton**

v.

**Stanley Stadolny and Susan Stadolny.**

Commonwealth Court of Pennsylvania.

Argued Oct. 20, 2011.
Decided Feb. 7, 2012.
As Amended May 9, 2012.

Carl J. Greco, Scranton, for appellant Redevelopment Authority of the City of Scranton.

W. Boyd Hughes, Dunmore, for appellees Mario Piccolino, Josephine Piccolino also known as Giuseppina Piccolino, Stanley Stadolny and Susan Stadolny.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge (P.), and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Redevelopment Authority of the City of Scranton (Redevelopment Authority) appeals two orders of the Lackawanna County Court of Common Pleas (trial court). It appeals an order of January 20, 2011, sustaining the preliminary objections of Mario and Giuseppina Piccolino and Stanley and Susan Stadolny (Landowners) to the Redevelopment Authority's condemnation of their properties. It also appeals an order of March 31, 2008, denying the Redevelopment Authority's petition to disqualify Landowners' counsel. We affirm the trial court's order on Landowners' preliminary objections, which decision moots the Redevelopment Authority's appeal of the March 31, 2008, order.

## Background

In 1997, the City Council of Scranton approved a redevelopment plan (Redevelopment Plan) for the Lackawanna East Redevelopment Area (Area) in Scranton, which runs along the north and south side of Lackawanna Avenue. City Council approved the plan after the Scranton Planning Commission determined the Area was a blighted area in need of redevelopment. Landowners own properties within the Area on the south side of Lackawanna Avenue.

On or about August 8, 2006, the Redevelopment Authority filed two declarations of taking against the properties of Landowners. The declarations stated that Landowners' properties were being condemned in accordance with an approved redevelopment plan for a blighted area.[1]

Landowners filed timely preliminary objections. They asserted that their respective properties were not blighted and had been expressly exempted from the Redevelopment Plan for the Area because they had been identified as properties not to be acquired.[2] Landowners challenged the Redevelopment Authority's power to condemn; the adequacy of the bond; and the procedures followed by the Redevelopment Authority in its condemnation.

In response to the preliminary objections, the Redevelopment Authority petitioned to disqualify Landowners' counsel, W. Boyd Hughes, Esq., and the law firm of Hughes, Nicholls and O'Hara. The Redevelopment Authority argued that Hughes' prior work for the Redevelopment Authority as its solicitor disqualified him from representing Landowners. In support, the

---

1. The Redevelopment Authority filed a similar declaration of taking against M & S, Inc. which owns property located at 500 Lackawanna Avenue, Scranton, Pennsylvania. There were similar preliminary objections filed against that condemnation, but those

objections were withdrawn, and the matter was resolved.

2. The Piccolinos own property at 504 Lackawanna Avenue, and the Stadolnys own property at 506 Lackawanna Avenue.

Redevelopment Authority contended that Hughes had reviewed the Redevelopment Plan at the time it was developed in 1997; advised the Redevelopment Authority on the procedures for implementing the plan; and had filed condemnations to implement the Redevelopment Plan. In light of those actions, the Redevelopment Authority argued that Hughes could not represent Landowners in a matter adverse to his former client.

Hughes testified that he had not served as the Redevelopment Authority's solicitor for many years. He described his prior work as advising the Redevelopment Authority on the procedural requirements for implementation of the Redevelopment Plan but insisted that he had not been personally involved in the plan's development. He acknowledged that he attended Redevelopment Authority meetings; defended challenges to the Redevelopment Plan; and handled appeals for the Redevelopment Authority. Hughes' version of his work for the Redevelopment Authority was corroborated by Donald King, City Planner for Scranton, and Marvin Brotter, the urban development specialist who created the Redevelopment Plan.

The trial court denied the disqualification, holding that Hughes' work for the Redevelopment Authority did not lead to the acquisition of confidential information that could be used in his representation of Landowners. The trial court then scheduled two days of hearings on the merits of Landowners' preliminary objections.

At the hearing, Landowners presented several documents. The map attached to the Redevelopment Plan placed Landowners' properties within the boundary lines of the Area. However, the properties were each designated as properties "NOT TO BE ACQUIRED." Reproduced Record (R.R. ——) at 519a. The Redevelopment Plan also stated that the Redevelopment Authority could revise the designation of "NOT TO BE ACQUIRED PROPERTIES" if done within three years after approval of the Redevelopment Plan.[3]

The trial court held that because the Redevelopment Authority sought to condemn Landowners' properties more than seven years after the plan was approved, the time had long passed for its ability to act. Accordingly, the condemnations were not lawful. Further, the Redevelopment Plan was never amended to change the status of Landowners' properties. The trial court sustained Landowners' preliminary objections.[4]

 The Redevelopment Authority has appealed both orders.[5] It argues that

3. The Redevelopment Plan stated the "NOT TO BE ACQUIRED PROPERTIES" had to be improved within 18 months. If not improved, the properties could be included in the Redevelopment Plan. However, inclusion had to take place within three years of the plan's approval.

4. Landowners did not develop their challenge to the adequacy of the bond at the evidentiary hearing before the trial court, nor was it briefed in the post-hearing briefs to the trial court. Thus, the trial court ruled the bond challenge abandoned.

5. Our scope of review of an order sustaining preliminary objections is limited to determin-

ing whether the trial court abused its discretion or committed an error of law. *Redevelopment Authority of City of Scranton v. Kameroski*, 151 Pa.Cmwlth. 345, 616 A.2d 1102, 1104 n. 2 (1992). In eminent domain cases, our scope of review is limited to a determination of whether the trial court committed an abuse of discretion or an error of law. *E–V Company Appeal*, 117 Pa.Cmwlth. 475, 544 A.2d 87, 88 (1988). Furthermore, our review of Urban Redevelopment Law condemnation cases is to determine whether the redevelopment authority has acted in bad faith or arbitrarily, followed the mandated statutory procedures in preparing a redevelopment plan, and committed no constitution-

the trial court misapplied the Urban Redevelopment Law (Law), Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. §§ 1701–1719.2.[6] Specifically, the trial court erred in determining that the Redevelopment Authority was acting under Section 12.1 of the Law, 35 P.S. § 1712.1.[7] Accordingly, the Redevelopment Authority argues that its failure to follow the procedures in Section 12.1 was of no moment. It also contends that the trial court erred in refusing to disqualify the law firm of Hughes, Nicholls & O'Hara from representing Landowners.

### Redevelopment Procedure

Generally, a redevelopment begins with a planning commission's creation of a plan that identifies the precise area to be designated as blighted. 35 P.S. § 1710. The redevelopment authority then takes the plan and creates a redevelopment proposal for all or part of the redevelopment area, which may include the selection of a developer. *Id.* If a development contract is not included with the proposal, then it needs to be separately approved by the governing body and found "in substantial conformity with the [previously approved] proposal." Section 10(j) of the Law, 35 P.S. § 1710(j). The redevelopment proposal returns to the planning commission for approval, after which it is sent to the governing body. 35 P.S. § 1710(e), (g). The governing body must hold public hearings on the redevelopment proposal, after which it may approve or reject the redevelopment proposal. 35 P.S. § 1710(g)-(h). If approved, the redevelopment authority acquires the power to implement the redevelopment plan. 35 P.S. § 1710(i).[8] One such implementation power is the power of eminent domain, which is granted by Section 12 of the Law, 35 P.S. § 1712. The redevelopment authority then oversees the redevelopment of the area designated as blighted. Section 9 of the Law, 35 P.S. § 1709. The redevelopment plan is recorded in the local recorder of deeds office.

### Condemnation of Landowners' Properties

The Redevelopment Authority argues that it was empowered to condemn Landowners' properties under authority of Section 12 of the Law, 35 P.S. § 1712. Landowners respond that the declarations of takings issued to them, which are identical in all provisions relevant to this appeal, stated that the takings were being filed under Section 12.1 of the Law, 35 P.S. § 1712.1. Section 12.1 governs the condemnation of individually blighted properties, regardless of their location. Section 12.1 condemnations must follow certain procedures, which include: a review by a blighted property review committee; the committee's certification to the planning commission that the property is blighted; service of a notice of blight determination upon the property owner; notice to the property owner of the opportunity to cor-

---

al violations. *Crawford v. Redevelopment Authority of the County of Fayette,* 418 Pa. 549, 554, 211 A.2d 866, 868 (1965); *E–V Company Appeal,* 544 A.2d at 89.

6. Because the Declarations of Taking were filed on August 8, 2006, the prior Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. §§ 1–101–1–109, *repealed by* Section 5 of the Act of May 4, 2006, P.L. 112, controls in this case.

7. Section 12.1 was added by Section 2 of the Act of June 23, 1978, P.L. 556.

8. Section 10(i) of the Law states: "Upon approval by the governing body of the redevelopment proposal, as submitted by the [Redevelopment] Authority, the Authority is authorized to take such action as may be necessary to carry it out." 35 P.S. § 1710(i).

rect the conditions; and notice that failure to correct the blight conditions may sub-ject the property to condemnation. 35 P.S. § 1712.1.[9] Landowners note that it is

9. It states, in relevant part, as follows:

(a) Notwithstanding any other provision of this act, any Redevelopment Authority shall have the power to acquire by ... eminent domain ... any blighted property as defined in this section, either within or outside of a certified redevelopment area and, further, shall have the power to hold, clear, manage and/or dispose of said property for residential and related reuse and commercial or industrial reuse. This power shall be exercised in accord with the procedures set forth in this section.

(b) Such power on the part of any Redevelopment Authority shall be conditioned upon the creation or existence of a blighted property review committee by ordinance of the governing body of the municipality....

(c) Blighted property shall include:

(1) Any premises which because of physical condition or use is regarded as a public nuisance at common law or has been declared a public nuisance in accordance with the local housing, building, plumbing, fire and related codes.

(2) Any premises which because of physical condition, use or occupancy is considered an attractive nuisance to children, including but not limited to abandoned wells, shafts, basements, excavations, and unsafe fences or structures.

(3) Any dwelling which because it is dilapidated, unsanitary, unsafe, vermin-infested or lacking in the facilities and equipment required by the housing code of the municipality, has been designated by the department responsible for enforcement of the code as unfit for human habitation.

(4) Any structure which is a fire hazard, or is otherwise dangerous to the safety of persons or property.

(5) Any structure from which the utilities, plumbing, heating, sewerage or other facilities have been disconnected, destroyed, removed, or rendered ineffective so that the property is unfit for its intended use.

(6) Any vacant or unimproved lot or parcel of ground in a predominantly built-up-neighborhood, which by reason of neglect or lack of maintenance has become a place for accumulation of trash and debris, or a haven for rodents or other vermin.

(7) Any unoccupied property which has been tax delinquent for a period of two years prior to the effective date of this act, and those in the future having a two year tax delinquency.

(8) Any property which is vacant but not tax delinquent, which has not been rehabilitated within one year of the receipt of notice to rehabilitate from the appropriate code enforcement agency.

(9) Any abandoned property....

\* \* \*

(e) The blighted property review committee and the appropriate planning commission, upon making a determination that any property is blighted within the terms of this section, must certify said blighted property to the Redevelopment Authority, except that:

(1) No property shall be certified to the Redevelopment Authority unless it is vacant....

(2) No property shall be certified to the Redevelopment Authority unless the owner of the property or an agent designated by him for receipt of service of notices within the municipality has been served with notice of the determination that the property is blighted, together with an appropriate order to eliminate the conditions causing the blight and notification that failure to do so may render the property subject to condemnation under this act....

\* \* \*

(f) Acquisition and disposition of blighted property under this section shall not require preparation, adoption or approval of a redevelopment area plan or redevelopment proposal as set forth in section 10, but at least thirty days prior to acquisition of any property under this section, the Redevelopment Authority shall transmit identification of the property to the planning commission of the municipality and shall request a recommendation as to the appropriate reuse of the property. The Redevelopment Authority shall not acquire the property where the planning commission certifies that disposition for

undisputed that the Redevelopment Authority did not follow the procedures mandated by Section 12.1 before filing its declarations of takings.

The trial court agreed with Landowners. It held that the Redevelopment Authority's condemnation of Landowners' properties was brought under Section 12.1 of the Law. The trial court based its decision on three key facts: (1) each Declaration of Taking specifically referred to Section 12.1 as the authority for the taking; (2) the Redevelopment Authority's own actions evidenced an attempt to comply with Section 12.1 procedures; and (3) Landowners' properties were listed as "NOT TO BE ACQUIRED" in the Redevelopment Plan and no change to the plan had been made within the three-year limit for amendments. The trial court held that the Redevelopment Authority's failure to follow Section 12.1 procedures rendered its condemnations arbitrary and null.

■ In arguing that the condemnations of Landowners' properties were pursued under Section 12 and not Section 12.1 of the Law, the Redevelopment Authority points to Section 1 of the Declarations of Taking, which recites that the Redevelopment Authority was "created pursuant to the provisions of the [Law], Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. § 1701 et. seq." R.R. 9a–10a. This general citation, it contends, permitted the Redevelopment Authority to proceed under any and all sections of the Law, at its choosing. This argument is not persuasive.

■ First, Section 2 of the Declarations of Taking specifically states that it has

been filed under authority of Section 12.1 of the Law. It states:

> The [Redevelopment Authority] has the *power* to acquire by Eminent Domain proceedings fee simple title in such lands [as] may be necessary for its corporate purposes, among which are the elimination of blighted areas and the replanning and redevelopment of such, *by virtue of Section 1712.1* [sic] of the [Law], Act of May 24, 1945, P.L. 991, [35] P.S. § 1701 et. seq.

R.R. 1224a (emphasis added).[10] The Redevelopment Authority attempts to avoid this specific reference to Section 12.1 of the Law by pointing to its Resolution 11 of 2006, which authorized the Redevelopment Authority's use of "any and all actions in accordance with the Laws of Pennsylvania which are necessary for the acquisition and condemnation of [the properties.]" R.R. 13a. Resolution 11 is irrelevant because it does not specifically refer to Landowners' properties. Further, it is the Declaration of Taking that establishes the basis of a condemnation, and it is binding on the condemnor. *In re Certain Parcels of Real Estate in Lehigh–Washington Street Development Project,* 420 Pa. 289, 290, 216 A.2d 774, 775 (1966).

Second, the Redevelopment Authority's argument ignores the fact that it started to follow the Section 12.1 procedures, at least with respect to the Stadolnys' property. For example, the Scranton Vacant Property Review Committee passed resolutions authorizing the sending of a "No–Action Notification Letter" to the Stadolnys, which is the first step in identifying an

---

residential or related use would not be in accord with the comprehensive plan of the municipality.

 (g) Power of eminent domain shall be exercised pursuant to a resolution of the Redevelopment Authority and the procedure set forth in the act of June 22, 1964

(Sp.Sess., P.L. 84, No. 6), known as the "Eminent Domain Code," as amended.

* * *

35 P.S. § 1712.1.

**10.** "Section 1712.1" is the Purdon's citation to the official cite, which is Section 12.1.

individual blighted property. That committee also approved a blight determination resolution letter, which explicitly referenced Section 12.1, but the letter was not sent. At a minimum, this evidence shows that the Redevelopment Authority began its condemnation of Landowners' properties believing it to be governed by Section 12.1.

■ Third, even assuming, *arguendo*, that the Redevelopment Authority proceeded under Section 12 of the Law, the mere fact that Landowners' properties were within the marked boundary of the Area subject to the Redevelopment Plan did not make the condemnations of Landowners' properties Section 12 takings. Donald King, Scranton's City Planner, testified that the "NOT TO BE ACQUIRED" designation meant that there were no plans to acquire the properties at that time, but that they could be taken in the future. This testimony did not persuade the trial court, which held that the "not to be acquired" designation gave Landowners notice that their properties were not to be condemned, so long as the Redevelopment Plan was not amended. The trial court relied upon *Redevelopment Authority of City of Scranton v. Kameroski*, 151 Pa. Cmwlth. 345, 616 A.2d 1102 (1992). We agree with the trial court.

In *Kameroski*, this Court held that the Redevelopment Authority could not condemn a property in Scranton that was not listed as a property to be acquired or within the designated boundaries of the redevelopment area. *Id.* at 1105. The Redevelopment Authority argued that the failure to designate the Kameroskis' property as one to be acquired was a minor typographical error. We rejected this argument, holding that a redevelopment plan "must be specific enough to notify the potential condemnees of their future." *Id.* at 1104. The certification of blight that accompanied the redevelopment plan in question did not give the Redevelopment Authority the power to condemn all property within the area. Rather, the certification of blight only "sets the stage for redevelopment" and it does not affect property rights. *Id.* (citing *Matter of Condemnation by Urban Redevelopment Authority*, 527 Pa. 550, 557, 594 A.2d 1375, 1378 (1991), *cert. denied*, 502 U.S. 1004, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991)). Because the Kameroskis' property was not included in the list of properties to be acquired, the Redevelopment Authority's actions were arbitrary and void.

The Redevelopment Authority argues that *Kameroski* is distinguishable because Landowners' properties, unlike the property at issue in *Kameroski*, did fall within the area found to be blighted and in need of redevelopment. This factual difference is minor and beside the point. The principle established in *Kameroski* is that property owners must be given notice of the possibility that their property may be condemned in the future. Here, when three years had passed after approval of the Redevelopment Plan without action by the Redevelopment Authority, Landowners had every reason to believe that their properties would never be condemned as part of the Redevelopment Plan. Landowners had no notice that their properties were in jeopardy, which, as the trial court held, offends our precedent in *Kameroski*.

■ The Redevelopment Authority next argues that a 2004 Development Agreement explicitly authorizes condemnation of Landowners' properties. Alternatively, it argues that the Development Agreement implicitly amended the approved Redevelopment Plan.

In 2004, Scranton City Council passed Resolution 19 authorizing the Redevelopment Authority to enter into a "Development Agreement" with the 500 Lackawan-

na Development Company to redevelop the 500 block of Lackawanna Avenue, including the Landowners' properties. The Development Agreement sets forth general plans to redevelop the 500 block of Lackawanna Avenue, including renovation of existing buildings, demolition of one building, construction of a new building, rehabilitation of an alley, and creation of a park. We disagree with the Redevelopment Authority's argument that the Development Agreement effected an implicit amendment to the Redevelopment Plan.

First, the Development Agreement does not identify Landowners' properties. It mentions "eleven buildings on the 500 block of Lackawanna Avenue, ten of which will be renovated and one of which will be demolished." R.R. 1330a. However, it does not identify which building will be demolished or where the new building will be located. Similarly, Resolution 19 of 2004 does not mention or refer to the Redevelopment Plan that it was supposedly amending.

Second, neither the Development Agreement nor Resolution 19 expressed an intention to amend the Redevelopment Plans' designation of Landowners' properties as "not to be acquired." Even if the Development Agreement had specifically mentioned Landowners' properties, which it did not, this would not change the outcome. Landowners were not parties to the contract; only the developer and Redevelopment Authority were parties. A contract, which Landowners had neither notice of nor opportunity to participate in, is not the appropriate way to modify the terms of an approved and publicly recorded Redevelopment Plan.

In sum, even assuming, *arguendo*, that the Redevelopment Authority intended to file its declarations of taking under Section 12 of the Law, it is of no moment. The approved Redevelopment Plan did not authorize the taking of Landowners' properties. Given the express limitation in the approved Redevelopment Plan on the Redevelopment Authority's power to act with respect to all properties identified as "NOT TO BE ACQUIRED," it simply lacked the power to condemn Landowners' properties.

## Conclusion

For all the above-stated reasons, we affirm the order of the trial court sustaining Landowners' preliminary objections to the Redevelopment Authority's declarations of takings.[11]

## *ORDER*

AND NOW, this 7th day of February, 2012, the January 20, 2011, order of the Lackawanna County Court of Common Pleas in the above-captioned matter is hereby AFFIRMED and the appeal of the March 31, 2008, order in the above-captioned matter is hereby DISMISSED as moot.

---

11. Given our decision, there is no reason to consider the trial court's order denying the Redevelopment Authority's petition to disqualify Landowners' counsel. That order is moot because there is no meaningful remedy that can be ordered. *Delaware River Preservation Company, Inc. v. Miskin,* 923 A.2d 1177, 1183 n. 3 (Pa.Super.2007). The result might be different were the Court reversing or remanding the matter for further proceedings.