IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeal of Demolition Notice | : | |
| relating to 1920 Riverside Drive | : | |
| South Williamsport | : | No. 533 C.D. 2023 |
| | : | |
| Tax Parcel #53-01-837 | : | |
| | : | |
| Appeal of: Brad Gordner and | : | |
| 1920 Riverside Drive, LLC | : | Argued: May 7, 2024 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE MATTHEW S. WOLF, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION
BY JUDGE WOLF                        FILED:  June 5, 2024

Before the Court is Brad Gordner and 1920 Riverside Drive, LLC's[1] (collectively, Landowner) appeal of the Court of Common Pleas of Lycoming County's (trial court) April 28, 2023 order.  The trial court affirmed the Borough of South Williamsport Board of Appeal's (Board) May 26, 2022 adjudication that denied Landowner's appeal of a Notice of Demolition issued by the Borough of South Williamsport Codes Office.  We affirm.

## BACKGROUND

Landowner is the owner of property identified as Tax Parcel 53-01-837, located at the northeast corner of Riverside Drive and South Maynard Street

---

[1] Brad Gordner is the owner of 1920 Riverside Drive, LLC.

(Property) in the Borough of South Williamsport (Borough).[2]  On November 12, 2018, the Borough enacted Ordinance No. 2018-01 (Ordinance) in furtherance of its desire to "place a ban and institute fines and cite nuisance citations for blighted properties within the Borough for public safety reasons."  Ordinance at 1.[3]  The Ordinance created the Blighted Property Review Committee and set forth a process enabling the Borough to acquire blighted property, as defined therein, through purchase, gift, bequest, or eminent domain.  Ordinance § 1.  In prior litigation beginning with the Blighted Property Review Committee and ending in the trial court, a portion of Landowner's Property commonly referred to as the "Protasio Building" was determined to be blighted under the Ordinance.  *See* Landowner's Brief, Exhibit 2 (Board's Adjudication) Finding of Fact (F.F. No. 2).  Landowner did not appeal the trial court's blight determination.  *Id.*

On December 13, 2021, the Borough enacted Ordinance No. 2021-12, which amended the Ordinance to add an additional remedy (Amendment). Amendment at 1. The Amendment provides:

---

[2] The Property, as described by the trial court, is as follows:

> There are five distinct portions of the [Property].  The easternmost segment of the [P]roperty consists of a square, paved parking lot (the "Parking Lot").  Directly to the west of the parking lot is a single-story convenience store (the "Convenience Store").  The middle of the five segments is a two-story residence (the "House"). To the west of the house is a narrow, single-story shed (the "Shed") overhung by an awning roof (the "Awning").  The final segment of the Property is a three-story structure known to the parties as the "Protasio Building."  The four segments of the Property forming structures are connected, their walls abutting; together they form the "Entire Building."  The Entire Building is a rectangle with the eastern and western exterior fairly short and the northern and southern exterior much longer. The Protasio Building comprises approximately half of the Entire Building's length.

Landowner's Brief, Exhibit A (Trial Court's Op.) at 1-2.
[3] The Blight Ordinance and Amendment thereto were not reproduced in the record.  They were filed separately on April 11, 2024.

Section 7.  Remedies:

> In the event a property has been deemed blighted, the Borough, at its discretion, may acquire the property via Eminent Domain or may demolish the blighted property, lien the landowner for demolition costs and file a Municipal Lien against the landowner.

*Id.* At some point after enacting the Amendment, the Borough served Landowner with an Amended Notice of Demolition ordering the Protasio Building portion of the Property to be demolished within 30 days.  Reproduced Record (R.R.) 28a-29a.[4] Landowner appealed the Amended Notice of Demolition to the Board.

*April 27, 2022 Hearing*

The Board held a hearing on Landowner's appeal on April 27, 2022.[5]   At the outset of the hearing, Landowner preserved arguments regarding the constitutionality of the Amendment, asserting it (1) was not properly enacted, (2) was beyond the powers of the Borough, (3) constitutes selective enforcement that targets Landowner, (4) violates the proscription against *ex post facto* laws, (5) and violates Landowner's due process rights.  Notes of Testimony (N.T.) 4-6, R.R. 8a-9a. The parties agreed that the Board did not have the authority to address Landowner's constitutional concerns, and the hearing was limited to the issue of whether the Board properly exercised its authority under the Ordinance to order demolition of the Protasio Building.  N.T. 8; R.R. 9a. The parties agreed the Borough bears the burden of proof.  N.T. 12; R.R. 10a.

In support of its case, the Borough called Steve Cappelli, Manager and Director of Public Safety for the Borough.  *Id.* Mr. Cappelli testified that in October

---

[4] The Amended Notice of Demolition is undated, and the exact date it was issued is not established on the record.  R.R. 28a-29a; *see also* Board's Adjudication, F.F. No. 3.
[5] The hearing transcript and admitted exhibits appear at pages 7a-46a of the Reproduced Record.

of 2018, he and other Borough council members met with Landowner to discuss Landowner's plan for the Protasio Building as it was, at that time, vacant, unoccupied, unsightly, and hazardous. N.T. 15-16; R.R. 11a. Mr. Cappelli indicated that the conversation between Borough representatives and Landowner resulted in "a lot of promises" to rehabilitate the building, but "most of – in fact, all of them have grown quite hollow." N.T. 16; R.R. 11a.

A few months after this meeting conversation, the Borough enacted the Ordinance, and the Borough's Codes Office was tasked with determining whether the Protasio Building met the definition of a blighted property thereunder. N.T. 16; R.R. 11a. The Codes Office submitted a report to the Blighted Property Review Committee indicating that the Protasio Building satisfied the requirements for blight under the Ordinance, and the Committee voted to proceed with a formal notice. N.T. 16; R.R 11a. Mr. Cappelli explained that a hearing was held, and at a subsequent meeting the Committee formally declared the Protasio Building portion of the Property blighted. N.T. 16-17; R.R. 11a-12a. Landowner appealed the blight determination to the trial court, which affirmed, and no further appeal was taken. N.T. 17-18; R.R. 12a. Mr. Cappelli stated that since the trial court's decision, the Borough has been waiting, but no rehabilitation of the Protasio Building has occurred. While Landowner would at times stop in and have a third party try and communicate future plans for the building "nothing has ever materialized in terms of efforts to secure a zoning permit or a building permit, which would then be the next step." N.T. 18; R.R. 12a.

Regarding the Amendment, Mr. Cappelli testified that it was adopted in conformity with the Borough Code,[6] *i.e.*, was properly advertised and subject to

---

[6] 8 Pa.C.S. §§ 101 – 3501.

comment prior to enactment. N.T. 19; R.R. 12a. He submitted that there was no public opposition to the Amendment. N.T. 19; R.R. 12a.

On cross-examination, Mr. Cappelli was questioned regarding Landowner's attempt to submit a remediation plan for the Property to avoid the instant litigation. N.T. 25-27; R.R. 14a. Mr. Cappelli testified that although there were some discussions of the possibility of a meeting, Landowner did not provide proof of financial ability to rehabilitate the Property. N.T. 27; R.R. 14a. Absent an irrevocable letter of credit in an amount necessary to complete rehabilitation, Mr. Cappelli testified that he believed "any meeting or discussion would be an exercise in futility." N.T. 27; R.R. 14a. The Borough rested.

Landowner testified next. He explained that he first met with Borough personnel regarding the Property in October 2018, and thereafter agreed to put in new windows and paint, and to come up with a plan of action for the Property. N.T. 31-32; R.R. 15a. Landowner testified that he has fulfilled all three of those promises but has been unable to have anyone at the Borough review his plans in order to determine whether he needs a zoning variance. N.T. 31-32, 36-37; R.R. 15a-17a. Landowner stated that he submitted demolition permits for two of the parcels on the Property, which were granted, but they have since expired. N.T. 38; R.R. 17a. Landowner explained a cyclical process where he is not permitted to submit new plans because he is on the Borough's blighted property list but cannot get off the blighted property list without submitting new plans. N.T. 39; R.R. 17a. Landowner testified that it would cost $300,000 to rehabilitate the Property and First Citizens Community Bank currently has a mortgage on the property for $148,000. N.T. 40-41; R.R. 17a-18a. He explained that he cannot get a construction loan without a

building permit, but he has about $250,000 cash that he could use to get started. N.T. 42; R.R. 18a.

Landowner also offered the expert testimony of Richard T. Hughes, a registered engineer and consultant who has worked as a structural engineer for 41 years. N.T. 44; R.R. 18a. Mr. Hughes testified that he inspected the Property on September 15, 2021, and issued a report. He explained that at the time of his inspection, the Property was gutted down to the studs and swept clean. N.T. 47; R.R. 19a. He stated that the Property retained water, sewer, and power, and it complied with the International Building Code with the exception of an awning roof on the east side elevation. N.T. 47-48; R.R. 19a. Mr. Hughes opined that there is no reason to require the building to be demolished, and that he did not find the building to be a safety hazard. N.T 50; R.R. 19a. He believed the building could be rehabilitated and that Landowner's proposed plans would turn the Property into a mixed use. N.T. 52; R.R 19a.

Landowner next offered the testimony of Randall Webster, a licensed professional civil engineer. N.T. 57; R.R. 22a. Mr. Webster testified that he toured the Property in 2015 or 2016 and drew up two plans, dated July 16, 2019, for how Landowner could maximize the space. N.T. 58-59, 62; R.R. 22a-23a. In both options, the Protasio Building was preserved and some of the other structures surrounding it would be demolished in order to account for parking. N.T. 61; R.R. 22a. Mr. Webster testified that his proposed plans would meet the Borough's zoning and parking requirements. N.T. 50-51; R.R. 22a-23a.

On rebuttal, the Borough offered Victor Marquardt, employee of Code Inspections, Inc. N.T. 67; R.R. 24a.[7] Mr. Marquardt testified that he has been a zoning officer and floodplain administrator for the Borough since November of 2019. N.T. 68-69; R.R. 24a-25a. He explained that since he began working for the Borough, he received "zoning and permit applications" from Landowner along with "a set of building plans and [] a site sketch" prepared by Tony Komarnicki relating to the Property. N.T. 69a; R.R. 25a. Mr. Marquardt stated that in response to those submissions, he explained to Landowner that while the Borough may be able to give preliminary zoning approval, until the portions of the Property that Landowner proposed to demolish were indeed demolished, there was no way to give a final zoning determination. N.T. 69-70; R.R. 25a. He testified that Landowner then applied for demolition permits for the convenience store and the home portion of the Property, which were granted, but have now long since expired. N.T. 70-71; R.R 25a.

*Board's Adjudication*

On May 26, 2022, the Board issued an adjudication denying Landowner's appeal of the Amended Notice of Demolition. The Board found that since the determination of blight in 2021, Landowner failed to undertake any efforts to rehabilitate the Protasio Building. Board's Adjudication, F.F. No. 7. Moreover, while Landowner testified that he has $250,000 in cash to proceed with renovations, presented the testimonies of Mr. Hughes and Mr. Webster, and entered into evidence the Komarnicki plans, the Board found that the plans were very basic, and the cost of new construction would be approximately $300,000.00. Due to the "vagueness

---

[7] The Borough offered Mr. Marquardt's testimony in the event that the Board determined the testimony from Landowner and his expert witnesses regarding rehabilitation is deemed relevant. N.T. 67; R.R. 24a.

of the plan and the fact that nothing has happened in a number of years, the Board question[ed] the credibility of testimony on impending construction plans." *Id.* at 5-6. Additionally, the Board cited *Redevelopment Authority of the City of York v. Bratic*, 45 A.3d 1168 (Pa. Cmwlth. 2012), for the proposition that a local agency is under no obligation to provide owners of blighted property an opportunity to remediate. Here, the Borough had given Landowner several years to rehabilitate the Protasio Building, but nothing had come to fruition. Accordingly, the Board concluded that the Borough acted within its discretion in determining that the blighted condition of the Protasio Building will not be eliminated in a timely manner and that it should be demolished. *Id.* at 6, Conclusion of Law (C.L.) 1-6. Landowner appealed the Board's decision to the trial court.

*Trial Court's Decision*

Before the trial court, Landowner raised four allegations of error to the Board's adjudication. First, Landowner argued the Board's conclusions were not supported by the testimony and evidence adduced at the hearing. He maintained that the Borough had the burden to create an adequate factual record to establish that the Protasio Building was not structurally sound or could not be rehabilitated in order to elect the remedy of demolition under the Amendment, and it failed to do so. He argued the Board committed a clear error of law when it ruled rehabilitation testimony irrelevant and inadmissible. Second, Landowner argued that the Amendment is void for vagueness as it does not have any standards or guidelines regarding when a blighted property may be subject to demolition or who makes the determination. Third, Landowner argued that the Amendment was enacted with the sole purpose of enabling the demolition of the Protasio Building and constitutes an unlawful selective enforcement. Fourth, Landowner argued that because the

8

Protasio Building was determined to be blighted under the Ordinance in 2021, the Amendment, which was not enacted until 2022, cannot be applied. Landowner suggests the Board's attempt to demolish the Protasio Building under the Amendment violates the constitutional proscription against *ex post facto* laws.

In an opinion and order dated April 28, 2023, the trial court rejected each of Landowner's allegations of error. It found that the Board's conclusions were supported by substantial evidence, as the record shows that the Protasio Building remains blighted, that Landowner had not applied for any building permits, and that Landowner's previously acquired demolition permits lapsed after significant time with no action. Trial Court's Op. at 38. In light of this record evidence establishing that the Protasio Building had not been rehabilitated in the two years since the blight determination, the Board's decision to deny Landowner's appeal of the Amended Notice of Demolition was adequately supported. *Id.* The trial court also found that the Board's decision to not consider Landowner's proffered rehabilitation evidence was in accord with the plain language of the Amendment, which does not require a finding that a property cannot be rehabilitated before the Borough may elect to demolish it. *Id.* at 39.

The trial court also concluded that Landowners' argument that the Amendment is void for vagueness is belied by the Amendment's plain language. On its face, the Amendment states that blighted property is subject to demolition at any time, with the caveat that the Borough may pursue alternate remedies set forth in the Ordinance, and that the Borough is responsible for electing the demolition remedy. The trial court notes that Landowner's true complaint is not due to vagueness, but rather due to the Amendment's explicit recognition that the Borough may pursue various remedies against blighted property, and the lack of standards articulating

9

when demolition is appropriate. The trial court found no issue with the lack of written standards for determining which remedy is appropriate, noting that this "is exactly the sort of discretion that governmental authorities inherently possess." Trial Court's Op. at 33.

On Landowner's claim of selective enforcement, the trial court found that the record contained no evidence to establish that the Borough is not electing the remedy of demolition for other blighted properties, or that the blighted Protasio Building was intentionally and purposefully singled out for an invidious reason. Trial Court's Op. at 37.

Finally, as to Landowner's *ex post facto* claim, the trial court recognized that the prohibition against *ex post facto* laws applies only to criminal or penal, rather than civil cases. Nevertheless, it engaged in the seven-factor analysis to determine whether the Ordinance and Amendment, while civil in nature, are so punitive in purpose or effect as to negate the Borough's intent that it be civil. *Id.* at 34-36. It ultimately concluded that the Ordinance and Amendment are not punitive, but rather a valid exercise of the Borough's civil powers and thus there was no *ex post facto* violation. *Id.* at 36. The trial court also noted that while framed as an *ex post facto* challenge, Landowner also argued that the Amendment should not be given retroactive effect, which is a distinct legal concept. Trial Court's Op. at 28 n.36. On the question of retroactivity, the trial court found that because the condition triggering the Amendment's application, here the determination of blight, was in effect on the date of the Amendment's enactment, the application of the Amendment is permissible. *Id.* at 36-37 (citing *R&P Servs. v. Dep't of Revenue*, 541 A.2d 432 (Pa. Cmwlth. 1988); *Sher v. Berks Cnty. Bd. of Assessment Appeals*, 940 A.2d 629 (Pa. Cmwlth. 2008)).

Landowner appealed the trial court's decision to this Court.

## ISSUES

On appeal,[8] Landowner raises the following issues for the Court's consideration: (1) whether the trial court considered matters outside the record; (2) whether the Board's conclusions were supported by substantial evidence; (3) whether the Amendment was selective enforcement and an impermissible *ex post facto* law; and (4) whether the Amendment is unconstitutionally vague.[9]

## DISCUSSION

## I.

Landowner asserts that the trial court erred by extensively reviewing and relying on facts from the prior blight litigation in the underlying opinion and order. See Trial Court's Op. 3-5. Landowner argues that the prior blight litigation was not heard by the Board, but by a different local body, the Blighted Property Review Committee, and it should not have been referenced or considered in the trial court's underlying opinion and order. Landowner's Brief at 9 (citing *Piatek v. Pulaski Twp.*, 828 A.2d 1164 (Pa. Cmwlth. 2003), *Schuylkill Twp. v. Pa. Builder's Ass'n*, 935 A.2d 575 (Pa. Cmwlth. 2007)).

The Board disagrees that the trial court based its decision on facts outside the record. Rather, it submits that the trial court merely recounted the prior litigation in order to provide adequate background and procedural history and to put certain witness testimony in context. The facts of the previous blight litigation are

---

[8] "In evaluating the decision of an agency, where a complete record is made before that agency, our standard of review is whether the agency committed an error of law and whether the material findings of fact are supported by substantial evidence. In addressing constitutional violations, our standard of review is de novo." *Piatek v. Pulaski Twp.*, 828 A.2d 1164, 1170 (Pa. Cmwlth. 2003) (internal citations and quotations omitted).

[9] The Board's brief responds to Landowner's first and second issue. The Borough's brief addresses the remaining issues.

conclusively established, as Landowner did not appeal the prior decision. The Board submits the trial court may stand by its earlier decision based on the law of the case doctrine. *See Sugarhouse Hosp. Gaming, LP v. Pa. Gaming Control Bd.*, 162 A.3d 353 (Pa. 2017) (prior legal conclusion of a court on issue becomes law of the case). Additionally, to the extent Landowner argues it was error to reference the prior opinion and order because it was not put into evidence before the Board, the trial court has the authority to take judicial notice of its prior decision pursuant to Pennsylvania Rule of Evidence 201(b)(2).[10] It rejects Landowner's reliance on *Schuylkill Township* and *Piatek*, maintaining those cases are inapposite.

We agree with the Board. In *Schuylkill Township*, the township raised a substantial evidence challenge to an adjudication of the Secretary of Labor and Industry that invalidated the township's ordinance. In *Piatek*, this Court discussed the application of the coordinate jurisdiction rule, which provides that judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. Neither *Schuylkill Township* nor *Piatek* discuss the precise issue raised by Landowner here. Moreover, the prior blight proceedings and the instant case were heard before the same jurist, Judge Lindhart, and he did not overrule his prior blight determination. While this Court recognizes that the trial court's decision at pages 3-5 discusses the prior administrative appeal regarding the Property's blight

---

[10] Pennsylvania Rule of Evidence 201(b)(2) provides:

> (b) Kinds of Facts that may be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> ****
>
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Pa.R.E. 201(b)(2).

determination in detail, we conclude that the inclusion of this information for background purposes was not improper and it was within the trial court's purview to take judicial notice of its prior decision, despite it not being entered into evidence before the Board. *See* Pa.R.E. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

## II.

Next, Landowner argues that the Board's conclusions were not supported by substantial evidence of record. Landowner submits that the Borough failed to present any evidence at the hearing that the Protasio Building was not structurally sound or could not be rehabilitated in support of its Amended Notice of Demolition. Landowner, on the other hand, produced testimony and evidence that established he hired an architect to draw up plans to renovate the property and had attempted several times to meet with Borough officials to move forward with rehabilitation. Landowner argues he was caught in a catch-22 situation, where the Borough would not entertain his requests for permits due to the blight determination, and he could not secure financing to move forward with rehabilitation without permits from the Borough. Landowner argues that the "Board's finding that the report and testimony were inadmissible was a clear error of law in light of the [Amended] Notice of Demolition." Landowner's Brief at 11. Landowner additionally takes issue with the Board's reliance on this Court's opinion in *Bratic*, 45 A.3d 1168, for the proposition that the Borough is under no obligation to provide the owner of a blighted property time to remediate. Landowner argues *Bratic* is inapplicable as it dealt with condemnation of blighted property, not the demolition thereof.

13

The Board responds that Landowner's own testimony established that there was an extended period of time after the blight determination in which Landowner could have undertaken remediation efforts, but he did not. While he obtained demolition permits, he allowed them to expire and did not seek zoning or building permits in furtherance of his purported remediation plans. The Borough submits it is not obligated to give a property owner an indefinite period of time to fix a blighted property based on nebulous promises and lack of action. The Borough argues the evidence adequately supports the Board's decision affirming demolition.

Substantial evidence is "such evidence that a reasonable person would accept as adequate to establish the fact in question." *Moorehead v. Civ. Serv. Comm'n of Allegheny Cnty.*, 769 A.2d 1233, 1238 (Pa. Cmwlth. 2001). "A reviewing court will examine, but not weigh, the evidence" because the local agency, acting as the factfinder, "is in a better position to discover the facts based upon the testimony and the demeanor of witnesses. The court may not substitute its judgment for that of the [local agency]." *Id.* (citation omitted).

Landowner argues, in essence, that for the Amended Notice of Demolition to stand, the Borough had to present sufficient evidence to establish that the Protasio Building could not be rehabilitated. We disagree. Landowner has cited no authority to establish that the Borough had to produce such evidence before moving forward with demolition of a blighted property under the Ordinance and Amendment. Moreover, while we agree with Landowner that *Bratic* dealt with condemnation of a blighted property under the Urban Redevelopment Law (URL),[11] we find the general principles enunciated in *Bratic* applicable here. In *Bratic*, the condemnee

---

[11] Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701-1719.2.

challenged the condemnor's authority to limit the time for remediation of blighted property to 30 days. This Court rejected the condemnee's argument, explaining:

> We have stated that a Redevelopment Authority like Condemnor is under no obligation to provide owners of blighted properties an opportunity to remediate. *In re Condemnation by Urban Redevelopment Auth.*, [] 544 A.2d 87, 91 ([Pa. Cmwlth.] 1988). In *In re Condemnation by the Redevelopment Authority of the City of Lancaster*, this Court overruled an objection to a condemnation schedule similar to the schedule at issue here, where a condemnee also objected to the 30–day appeal period determining the speed at which condemnation proceedings could progress. 682 A.2d 1369 (Pa. Cmwlth.1996), *appeal denied*, [] 692 A.2d 567 ([Pa.] 1997). The URL leaves the determination of the time period allowed for remediation within the discretion of the Condemnor and we find no abuse, bad faith, or error in the Condemnor's exercise of that discretion to determine whether or within what time period a condemnee is allowed to effect remediation following a notice of blighted property.

*Bratic*, 45 A.3d at 1174-1175. Like the URL in *Bratic*, the Amendment allows the Borough to exercise its discretion to determine whether or within what time period a landowner is allowed to effect remediation. As the Protasio Building has been deemed blighted since 2021, we find no error in the Borough's discretion to elect demolition at this time.

Finally, to the extent Landowner claims the Board erred in finding evidence of rehabilitation "inadmissible," such contention is not supported by the record. Landowner's evidence was indeed admitted and considered by the Board. *See* Board's Adjudication at 2 ("[Landowner] identified the following Exhibits: Exhibit 1, a report from Richard T. Hughes; Exhibit 2, Hughes' Curriculum Vitae, Exhibit 3, Sketch Plan Option 1, Exhibit 4, Sketch Plan Option 2 and Exhibit 5, Komarnicki

Diagrams. The exhibits were admitted."). The Board discussed Landowner's evidence, but ultimately "question[ed] the credibility of testimony on impending construction plans" as a result of the vagueness of Landowner's proposed plans and the fact that no rehabilitation had occurred in several years. Board's Adjudication at 5-6. In our appellate capacity, we will not reweigh the evidence or disturb the Board's credibility determination. We conclude that Landowner's substantial evidence argument lacks merit.

## III.

Landowner next argues the Amendment constitutes selective enforcement and an *ex post facto* law. He maintains there can be no dispute that the Amendment was enacted for the sole purpose of demolishing the Protasio Building. Citing this Court's unreported opinion in *FC Station Square Landmark, LLC v. City of Pittsburgh* (Pa. Cmwlth., No. 744 C.D. 2021, filed June 24, 2022) (*FC Station*), Landowner also argues that the Amendment permitting the Borough to elect the remedy of demolition cannot apply, as it was enacted after the Protasio Building's blight determination. The Borough responds that the record is devoid of evidence of selective enforcement and application of the Amendment is permissible.

In order to establish selective enforcement, a party must establish that "others similarly situated were not prosecuted for similar conduct" and that the "prosecution was based on impermissible grounds such as race, religion, the exercise of some constitutional right, or any other such arbitrary classification." *Twp. of Cranberry v. Spencer*, 249 A.3d 9 (Pa. Cmwlth. 2021) (*Spencer*) (quoting *Com. v. Mulholland*, 702 A.2d 1027, 1034 (Pa. 1997)). We agree with the Borough that the record in this matter contains no evidence of selective enforcement. As mentioned by the trial court, the timing of the Borough's enactment of the Amendment may imply that the

16

extended litigation concerning the Protasio Building was a motivating factor for the Borough to add the remedy of demolition to its quiver.  However, this implication is insufficient to prove a claim of selective enforcement, and Landowner offered no additional evidence to satisfy the two-prong test set forth in *Spencer*, *supra*.

We also conclude that although the Amendment was enacted after the Protasio Building was deemed blighted under the Ordinance, the application of the Amendment is not impermissibly retroactive or violative of the proscription against *ex post facto* laws.[12]  Landowner cites *FC Station* for the proposition that for an ordinance to be given retroactive effect, it "must be pending as of the date of petitioner's application for a building permit." *FC Station*, slip op. at 3 (referencing the pending ordinance doctrine of *Boron Oil Co. v. Kimple*, 284 A.2d 744 (Pa. 1941), which makes amendments to a zoning ordinance applicable to any application for a building permit submitted subsequent to public notice that amendments to the ordinance will be considered).   However, this case does not deal with a building permit or other zoning application.

We agree with the trial court that based on the facts of this matter, this Court's decision in *R&P Services* is more instructive. *R&P Servs.*, 541 A.2d at 432,   In *R&P Services*, a cigarette stamping agent (agent) applied for a license with the Department of Revenue.  Several days after its receipt of the agent's license application, the Department amended its guidelines to prohibit the issuance of licenses to companies that owed the Department overdue sales tax.  The agent owed the Department overdue sales tax, and its license application was denied on that basis.  Before this Court, the agent argued that because it submitted its application

---

[12] Landowner does not develop or cite any authority in support of his *ex post facto* argument, but apparently uses that term to reference his claim that the Amendment may not be applied retroactively.

before the Department amended its guidelines, the denial of its application on that basis was impermissibly retroactive. This Court disagreed, explaining that "[w]here no vested right or contractual obligation is involved, an act or a regulation is not impermissibly construed retroactively when applied to a condition existing on its effective date, even though the condition results from events which occurred prior to that date." *R&P Servs.*, 541 A.2d at 434.

Here, Landowner has not identified or argued that he has a vested right or contractual obligation relating to the blighted condition of the Protasio Building. Moreover, the blight was extant on the effective date of the Amendment, and the Amended Notice of Demolition was issued thereafter. For these reasons, the Borough's decision to apply the remedy provided for in the Amendment to the Protasio Building was not impermissibly retroactive.

## IV.

Finally, Landowner argues that the Amendment is void for vagueness. He maintains that the Amendment does not state who within the Borough determines when blighted property should be demolished and does not provide guidelines to determine when the remedy of demolition is appropriate.[13]

The Borough responds that Landowner's argument ignores the condition precedent to a notice of demolition, *i.e.*, the determination of blight. It argues that the Ordinance as a whole contains the requisite standards and guidelines for when a property may be deemed blighted, and the Amendment merely added the additional remedy of demolition, which does not require separate standards or guidelines, and is not defectively vague.

---

[13] Landowner also states that if this is part of the appeal process of a determination of blight, then the Blighted Property Review Committee should have heard this matter, not the Board. He does not develop this argument further.

18

We agree with the Borough. We note, initially, that ordinances are "presumed to be constitutional, and a heavy burden is placed on the one seeking to challenge the constitutionality of an ordinance." *Com. v. Ebaugh*, 783 A.2d 846, 849 (Pa. Cmwlth. 2001). An ordinance is unconstitutionally vague "only when it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited by the law." *Id.* Here, the Amendment is part and parcel of the Ordinance, which sets forth specific guidelines and standards regarding the blight determination process for property located in the Borough. The Amendment, which adds an additional remedy to that scheme, does not deny a person of ordinary intelligence the reasonable opportunity to know what conduct is prohibited. Consequently, it does not suffer from a vagueness defect.

## CONCLUSION

For these reasons, the Court affirms the trial court's April 28, 2023 order.

_____
MATTHEW S. WOLF, Judge

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeal of Demolition Notice | : | |
| relating to 1920 Riverside Drive | : | |
| South Williamsport | : | No. 533 C.D. 2023 |
| | : | |
| Tax Parcel #53-01-837 | : | |
| | : | |
| Appeal of: Brad Gordner and | : | |
| 1920 Riverside Drive, LLC | : | |

# **O R D E R**


      AND NOW, this 5th day of June, 2024, the April 28, 2023 Order of the Court of Common Pleas of Lycoming County is AFFIRMED.


                              _____

                              MATTHEW S. WOLF, Judge